### SABIN v. FOGARTY.

#### (Circuit Court, D. Washington, E. D. May 17, 1895.)

CONTEMPT OF COURT—SEIZURE BY SHERIFF OF PROPERTY IN POSSESSION OF MARSHAL.

A marshal selling certain personal property held by him under process from a federal court, after accepting a bid, caused the property to be weighed and transported to the place designated for delivery to the purchaser. While at that place, in charge of a deputy marshal, and before delivery, the goods were seized by a sheriff, though he had been warned that they were still in the marshal's custody; and he continued to hold possession after formal notice in writing. *Held,* that this was a contempt of court, which should be punished by requiring the defendants to pay into court the full amount for which the property was sold by the marshal, together with a fine of $10 each and costs.

This was an action by R. L. Sabin against J. B. Fogarty. The case was heard on a motion to punish J. C. Lloyd and W. M. Stinson for contempt for disobeying and resisting process of the court.

In an action at law by R. L. Sabin against J. B. Fogarty, a writ of attachment against the property of the defendant was sued out in this court, and, by virtue thereof, a levy was made upon real and personal property, including live hogs, as the property of the defendant. Afterwards, under an order of sale issued by the court, Charles Thompson, a deputy United States marshal, made sale of the hogs, at public auction, by weight, to one Dan Burns, receiving at the time $40 on account of the purchase price, and agreed with Burns to remove the hogs to a place where they could be weighed, and

afterwards deliver them to him at the stock yards of the Northern Pacific Railroad Company. near Ellensburg, when the balance of the purchase price was to be paid. This arrangement was carried out so far that the hogs, after being weighed, were placed in the stock yards, with other hogs belonging to Burns; and the said deputy marshal, with his assistant, was there awaiting acceptance by Burns, and payment of the price bid at the sale; and after Burns had contracted to sell and deliver the hogs at Seattle, and had arranged for the transportation thereof, but before he had received the hogs from Thompson or paid the purchase price, the respondent Stinson, sheriff of the county, came to the stock yards with a writ of replevin, sued out in an independent action commenced in a state court, by a third party, claiming title to the hogs, adversely to all the parties in the attachment suit, and, being thereto instigated by the respondent Lloyd, acting for the attorneys for the plaintiff in the replevin suit, took the hogs from Thompson's possession. The sheriff was informed that Thompson was acting as a deputy marshal, and claimed to be in possession thereof in his official capacity, before the hogs were taken from the corral; and he was by an attorney for the plaintiff in the attachment suit fully and clearly informed as to the exact status of the property; and afterwards, while the hogs were yet in his possession, a demand in writing for the return of the hogs to the marshal was duly served upon him. Notwithstanding said warnings and demand, the sheriff retained possession of the hogs, and has disposed of the same.

Cyrus Happy, for plaintiff.
H. J. Snively, for defendant.

HANFORD, District Judge (after stating the facts). It is my judgment that the respondents, W. M. Stinson and J. C. Lloyd, are guilty of contempt of court, for taking the property out of the hands of Deputy Marshal Thompson. There is no principle better settled than that property which has been levied upon under a writ of attachment or execution is in the custody of the court, and to forcibly and intentionally take it out of the hands of the officer holding it under process is to disobey and resist the process. The facts in regard to the possession of the property are that the marshal, under the order of the court, had conducted a sale. The sale was not completed when a bid was accepted. The marshal was required to sell for cash, and he had no right to part with the possession until he received the money. Payment of the purchase money could not be made on the instant. The nature of the property was such that it took time to weigh it. It had to be moved before it could be weighed, and it took time to complete the arrangement, by weighing the property. receiving payment, and the delivery. The last act necessary to complete the transaction or pass the property to the purchaser was the delivery. The marshal had not parted with the possession. He had caused the property to be conveyed to a place where it could be weighed, and, after it had been weighed, it was taken to a place where the purchaser was to receive it; but he never gave up control of it. The evidence shows plainly that either he or some of his employés remained with the property until it was taken by the sheriff, so that, as a matter of fact, at that time the property was in the custody of the court. It has been taken by the defendants, and it is a question whether the court shall yield, or compel these defendants to yield. It is the plain duty of the court to protect its process, and protect its officers in the execution of its process.

No claim of additional right by the defendants, on the ground of their lack of knowledge or information that the property was in the custody of the court, can be sustained. Whatever the facts may have been about the failure of the deputy marshal to give formal notice before the sheriff took the property into his possession, the transaction was not complete—the marshal had not yielded possession, nor acquiesced in any transfer of possession—before he did give formal notice; and that was done in a formal way, after an attorney had explained to the sheriff the exact state of affairs, and warned him that he would interfere with the orders of this court in attempting to take the property. After that, there was still further notice given in writing, the effect of which was that the sheriff called for an indemnifying bond to protect him from the consequences of knowingly opposing the process of this court.

In regard to the good faith of the defendants, I think I would be willing to say that they were acting under a mistake as to their rights, if it were not for the affidavits they have filed here. I am satisfied that in the beginning they had no intention of resisting the process of this court, but after commencing the replevin suit, and attempting to take possession, finding the situation as it was, they saw fit to proceed; and, after being called to account in this court, they attempt to evade the consequences by making false statements in their affidavits. Mr. Stinson, in his affidavit, makes this statement: That this affiant, at the time he took possession of said property, did not see there present any deputy marshal, nor did he know such deputy marshal was there present, nor did any one claim to this affiant that said property was in the custody or control of any officer of the United States court, or any one else than said Dan Burns; and, further, he says that this affiant had no intention of in any way or manner interfering with the order of this honorable court; that he had no knowledge that this property was claimed to be in control of any United States marshal or his deputy. There is a decided preponderance of the evidence that Mr. Thompson did warn the sheriff, and warned Mr. Lloyd, and all other persons there, before anything had been done towards taking possession of the property, to desist; and, as I have already stated, before the property was taken possession of, the whole matter was explained by an intelligent business lawyer, and then the formality of notifying them that Thompson was deputy marshal, and that the property was in his official custody, took place. And, besides, Lloyd, who was there to direct the sheriff, representing the plaintiff's attorneys in the replevin suit, and Fogarty, knew all the time who Thompson was. Mr. Lloyd, in his affidavit, says: Affiant saw one Charles Thompson, deputy United States marshal, present before the demand by the said sheriff for the said property, and before the taking by said sheriff of said property; and, after the said taking, the said Charles Thompson, as such marshal or otherwise, never made any claim or demand for the said property. Mr. Lloyd, on the witness stand, has testified the same way as that affidavit reads, but he is contradicted by every other witness who has testified here, including Mr. Fogarty and Mr. Stinson. I have

no reasonable doubt in this matter. A contempt case is one in which the court must be convinced beyond any reasonable doubt of the facts, before finding a party guilty. Now, the facts are that the property was in the possession of the marshal under process of this court. These respondents knew it, and they intentionally and forcibly took it out of the marshal's possession.

The judgment of the court is that the defendants Stinson and Lloyd are guilty of contempt, as charged; and that they shall forthwith pay into the registry of this court, for the benefit of the parties concerned, the full amount for which the property was sold by the marshal, so that the marshal shall be protected, and so that Mr. Burns will be protected, to the amount of $40, paid by him on account of his bid at the sale; and that they each pay a fine of $10 and the cost of this contempt proceeding; and that every day in which they delay to pay into court the amount of money they are required to pay to make up the value of the property taken will be regarded as a continuing and additional contempt, for which there will be a fine of $50 against each of them.