In re ESKAY.

No. 7754.

Circuit Court of Appeals, Third Circuit.

Sept. 3, 1941.

---

Israel B. Greene, of Newark, N. J., for appellant.

Walter J. Bilder, of Newark, N. J. (Bilder, Bilder & Kaufman, of Newark, N. J., on the brief), for bankrupt estate.

Before CLARK, JONES, and GOODRICH, Circuit Judges.

CLARK, Circuit judge.

Fifteen years ago the writer of this opinion, speaking then for this Court by assignment,[1] expressed our concern at the revelations of a record from New Jersey.[2] That record portrayed a condition in the admin-

---

[1] 28 U.S.C.A. § 216.

[2] In re Press Printers & Publishers, 3 Cir., 12 F.2d 660.

istration of bankruptcy in that District of somewhat the unfortunate character afterwards so graphically described in the Donovan Report.[3] It is therefore discouraging to have the record in the case at bar disclose very little, if any, improvement in that same field, a branch of the administration of justice all too prone to abuse.[4] The appellant is a former employee of a bankrupt shirt[5] corporation. He was called for examination under Section 21, sub. a.[6] He was examined on four different days.[7] Thereafter and as a result thereof the referee in bankruptcy filed a certificate,[8] the pertinent part of which reads:

"I do hereby find and certify to the Judges that the said witness repeatedly and continually made answers to pertinent questions put to him which displayed a perfectly transparent case of intentional and willful evasion and refusal to make any explanation of the facts connected with said bankruptcy under the pretense of defective memory, and a manifest and deliberate determination to conceal all material facts within his knowledge; that during his examination he repeatedly and continually testified (as the reading of his testimony will show) in a vague, unsatisfactory, ambiguous, and contradictory manner, with the intention of obstructing the administration of justice and preventing the collection and distribution of the bankrupt's property and the discovery of the whereabouts of the same; that when he was asked regarding transactions directly within his knowledge, and facts which he must have known, he expressed ignorance or lack of recollection. * * *"

* * * * * * *

"I do hereby find and certify to the Judges that the witness' conduct shows beyond any doubt whatever that he is refusing to tell what he knows." Referee's Certificate, Appendix, pp. 5, 6.

In response to this Certificate, a judge of the District Court signed an order to show cause why the witness-appellant "should not be adjudged guilty of contempt."[9] One week later, the same learned District Judge signed another order, which as we intend to refer to it later, we set forth in full in a footnote.[10] The firm of attorneys designated therein represented the receiver and now represents the trustee, later appointed. Beginning on June 28, 1938, the learned District Judge signed thirty-three separate orders continuing the contempt proceedings, the last one entered February 26, 1940. On April 15, 1940, the respondent-appellant filed an answer. One year later another District Judge wrote an opinion,[11] entered an order,[12] and filed findings of fact and conclusions of law.[13] Pertinent parts of the order read:

"* * * A summary hearing having thereafter been held before this Court at which the said Henry H. Eskay appeared in person and by attorney and the facts and law were argued, this Court now finds that the said Henry H. Eskay, after taking the oath, refused to be examined according to law in the matter of Winton Shirt Corpora-

[3] In the Matter of An Inquiry Into The Administration of Bankrupts' Estates Conducted Before Honorable Thomas D. Thacher, Judge of the United States District Court for the Southern District of New York, Pursuant to the Petition of the Association of the Bar of the City of New York, the New York County Lawyers' Association and the Bronx County Bar Association, and the Orders of Said Court Made Thereon (March 22, 1930).

[4] See Donovan Report, above cited, Part I, Summary of the Abuses in Bankruptcy Administration and the Need and Objectives of Reform, p. 4.

[5] The shirts lost seem to have been those of the creditors.

[6] 11 U.S.C.A. § 44.

[7] May 6, May 10, May 16, and May 24, 1938.

[8] June 9, 1938.

[9] June 10, 1938.

[10] "It appearing that this Court did heretofore on the 10th day of June, 1938, by its order direct Henry Eskay to show cause before this Court at the time and place fixed in said order why he should not be adjudged guilty of contempt of this Court and punished accordingly, and good and sufficient reason appearing for the entry of this order, it is on this 17th day A. D. of June, 1938.

"Ordered that the law firm of Messrs. Bilder, Bilder & Kaufman be and it is hereby designated as counsel to prosecute the said alleged contempt for and on behalf of the Court."

Order Designating Counsel, June 17, 1938, Appendix, p. 44.

[11] April 8, 1941, 38 F.Supp. 221.

[12] April 9, 1941.

[13] April 16, 1941.

tion, a corporation, bankrupt, and, therefore, it is, on this 9th day of April, 1941.

* * * * * *

"Ordered, that the said Henry H. Eskay shall appear before this Court, in the Federal Building, Federal Square, Newark, New Jersey, on Tuesday, the 15th day of April, 1941, at 10:00 o'clock in the forenoon or as soon thereafter as the court can attend thereto, at which time sentence will be imposed upon him." Order Adjudging Appellant in Contempt of Court, Appendix, p. 87.

Before any sentence was imposed and on April 22, 1941, notice of this appeal was filed and on the same day a supersedeas order and bond were entered.

▌ The record discloses no reason for the failure to sentence. One can perhaps hazard the guess that it was because of a misunderstanding of the law. We quite agree with the learned District Judge that the contempt is a criminal one. We cannot pretend satisfaction with the state of the authorities re the distinction between criminal and civil contempt. That distinction is important because it may determine the contemnor's liability to removal for trial,[14] his right to a pardon by the chief executive,[15] the type of penalty imposed,[16] the availability of certain defenses,[17] the applicable Statute of Limitations,[18] and, as here, the method of review.[19] Where the contempt has not been committed in the presence of the court and evidence must be taken to establish the contempt, the court's

summary powers have been curtailed to the extent that the accused must be presumed to be innocent,[20] need not testify against himself[21] and must be found guilty beyond a reasonable doubt.[22]

A former professor in the Yale Law School has poured cold water on the whole idea, saying:

"Few legal distinctions are emptier than that—except of procedural technicality. * * *

"Courts punish for contempt sparingly. Their main use of the power is an in terrorem use—preventive, not punitive; and on the rare occasions when something that looks like a moderate punishment is summarily imposed, the remedial or preventive aspect usually outweighs the punitive. And in the still rarer instances of clearly punitive summary sentences for serious contempts, the qualms of disinterested observers are strong evidence of the occurrence of an abnormality approaching enormity." Nelles, The Summary Power to Punish for Contempt, 31 Columbia Law Review 956, 960, 963.

And the Supreme Court of Massachusetts has described the distinction as resting "in shadow."[23] So courts have determined the nature of contempt proceedings by resort to various formalities such as the method of initiating prosecutions,[24] the title of the proceedings,[25] the nature of the relief sought,[26] the fact that the contemnor has or has not testified,[27] the person who has con-

14 In re Ellerbe, C.C., 13 F. 530; cf. In re Graves, D.C., 29 F. 60.

15 Ex parte Grossman, 267 U.S. 87, 45 S.Ct. 332, 69 L.Ed. 527, 38 A.L.R. 131; Ex parte Magee, 31 N.M. 276, 242 P. 332; cf. In re Nevitt, 8 Cir., 117 F. 448; People v. Peters, 305 Ill. 223, 137 N.E. 118, 26 A.L.R. 16.

16 Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L. Ed. 797, 34 L.R.A.,N.S., 874; Denny v. State, 203 Ind. 682, 182 N.E. 313; cf. State v. Lehman, 100 Fla. 481, 129 So. 818; McNealey v. Rouse, Mo.Sup., 264 S.W. 383.

17 It is a good defense to an attachment for criminal, but not civil contempt that the contemnor acted in good faith upon advice of counsel. Matthews v. Spangenberg, C.C., 15 F. 813; Proudfit Loose-Leaf Co. v. Kalamazoo Loose-Leaf Binder Co., 6 Cir., 230 F. 120.

18 Gompers v. United States, 233 U.S. 604, 34 S.Ct. 693, 58 L.Ed. 1115, Ann. Cas.1915D, 1044.

19 Bessette v. Conkey Co., 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 997; Brimson v. State, 63 Ohio St. 347, 58 N.E. 803; cf. Lamb v. Cramer, 285 U.S. 217, 52 S.Ct. 315, 76 L.Ed. 715; Vilter Mfg. Co. v. Humphrey, 132 Wis. 587, 112 N. W. 1095, 13 L.R.A.,N.S., 591.

20 People v. Spain, 307 Ill. 283, 138 N. E. 614.

21 Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.,N.S., 874; Root v. MacDonald, 260 Mass. 344, 157 N.E. 684, 54 A.L.R. 1422.

22 In re McIntosh, 9 Cir., 73 F.2d 908; Sabin v. Fogarty, C.C., 70 F. 482.

23 Root v. MacDonald, 260 Mass. 344, 358, 157 N.E. 684, 688, 54 A.L.R. 1422.

24 Wakefield v. Housel, 8 Cir., 288 F. 712; Denny v. State, 203 Ind. 682, 182 N.E. 313.

25 See footnote 24.

26 Lamb v. Cramer, 285 U.S. 217, 52 S.Ct. 315, 76 L.Ed. 715; In re Nevitt, 8 Cir., 117 F. 448.

27 Mitchell v. Dexter, 1 Cir., 244 F.

ducted the prosecution[28] and the party to whom the fine has been ordered paid.[29]

■ One result of this judicial unpredictability has been to defeat the object of the tests, namely, to inform the accused at the outset with which form of contempt he is charged. In the principal case, we are lacking only one of the formalities inclining toward criminal contempt. That lack seems to have been also due to a legal misconception. It has been found proper for the court to have its own dignity upheld by litigant's counsel. The incentive to discover injury[30] seems to outweigh the theoretical impartiality of the public prosecutor.[31] There has been this qualification, however. In line with the purpose of advising the respondent, Judge Learned Hand said:

"The first are easily ascertainable; they will be openly prosecuted by the district attorney; it would not seem to be of consequence how they are entitled when that is true. In the second the court may proceed sua sponte without the assistance of any attorney, as in the case of disorder in the courtroom; there can be little doubt about the kind of proceeding when that is done. But the judge may prefer to use the attorney of a party, who will indeed ordinarily be his only means of information when the contempt is not in his presence. There is no reason why he should not do so, and every reason why he should; but obviously the situation may in that event be equivocal, for the respondent will often find it hard to tell whether the prosecution is not a remedial move in the suit, undertaken on behalf of the client. This can be made plain if the judge enters an order in limine, directing the attorney to prosecute the respondent criminally on behalf of the court, and if the papers supporting the process contain a copy of this order or allege its contents correctly. We think that unless this is done the prosecution must be deemed to be civil and will support no other than a remedial punishment." McCann v. New York Stock Exchange, 2 Cir., 80 F.2d 211, 214, 215.

The order of the learned District Judge, which we have quoted in footnote 10, shows no effort to comply with what we believe to be the sound principle as laid down by Judge Hand above.[32]

■ Balanced against this one lack, we find the kind of act contemned a powerful argument in favor of a criminal contempt. The statute under which this proceeding is brought gives the District Court power to punish for what happened "before a referee."[33] It might be argued, perhaps, that such power was inherent without legislative sanction. The court of bankruptcy might be said to include its subordinate officials and so to embrace them within its aura of exposure to affront. It is not necessary to go that far however. The statute has the sentence "refuse to be examined according to law."[34] It is clear that response to examination by false swearing is in violation of, rather than in accord with, law. The cases are unanimous in holding absence of veracity punishable in contempt.[35]

■■ Those cases seem to exhibit some failure to correlate the nature of false swearing in its relation to the two kinds of contempt. The civil type is coercive and looks to the future.[36] The contemnor, in the ancient phrase, carries the keys of the jail in his pocket. Criminal contempt punishes the past act and affords no locus pænitentiæ. Logically, if a court can determine the false in order to punish, it can determine the true in order to free. As a matter of policy, this is not quite so. The original offense is committed with no compulsion but the offender's conscience. The

926; Wakefield v. Housel, 8 Cir., 288 F. 712.

28 In re Kahn, 2 Cir., 204 F. 581; In re Guzzardi, 2 Cir., 74 F.2d 671.

29 Denny v. State, 203 Ind. 682, 182 N.E. 313; Eastern Concrete Steel Co. v. Bricklayers' & Mason Plasterers' Int. Union, 200 App.Div. 714, 193 N.Y. S. 368.

30 McCann v. New York Stock Exchange, 2 Cir., 80 F.2d 211.

31 Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314; noted in Criminal Law—Misconduct of Attorneys During Trial—Possible Remedies, 34 Michigan Law Review 1044; Improper Conduct of Prosecuting Attorney as Ground for Reversal, 26 Journal of Criminal Law 276.

32 See Federal Trade Commission v. A. McLean & Son, 7 Cir., 94 F.2d 802, 803, 805.

33 11 U.S.C.A. § 69, sub. a.

34 11 U.S.C.A. § 69, sub. a(4).

35 Gilbert's Collier on Bankruptcy, 4th Ed., Contempts Before Referees, §§ 891, 897.

36 Danzel, Contempt, pp. 4, 5; 7 Remington on Bankruptcy, 5th Ed., § 3023; Thomas, Problems of Contempt of Court, pp. 2, 3.

purging is done to satisfy the judge and so perhaps tempts the tribunal to determine in the light of practicalities rather than abstractions. This may be especially so where, as here, the false swearing is negative rather than positive. Mr. Chief Justice White, speaking for the Supreme Court in the case of Ex parte Hudgings, gave expression to this rule:

"If the conception were true, it would follow that when a court entertained the opinion that a witness was testifying untruthfully the power would result to impose a punishment for contempt with the object or purpose of exacting from the witness a character of testimony which the court would deem to be truthful; and thus it would come to pass that a potentiality of oppression and wrong would result and the freedom of the citizen when called as a witness in a court would be gravely imperiled." ?49 U.S. 378, 384, 39 S.Ct. 337, 340, 63 L. Ed. 656, 11 A.L.R. 333.

We suggest, then, that a criminal contempt is the remedy appropriate to false swearing by evasion. That being so, it is persuasive in classifying the proceedings in the principal case.

 We listed earlier some consequences following upon the distinction between civil and criminal contempt. One of them was the method of review. It is obvious that change by review is only pertinent to the otherwise unchangeable. The essence of civil contempt lies, as we have seen, in its assumption of biblical rejoicing over the black sheep. It follows that an order adjudging a contempt, and prescribing a punishment conditional on the action of the party in contempt, is not a final order, and is not appealable;[37] nor will an appeal lie from an order adjudging a party in contempt, but reserving the question of punishment for further consideration.[38] In criminal contempt per contra there is no time to go and sin any more. We encounter here another difficulty. Judicial punishment, by definition, is a matter of judicial discretion. It can have no finality, therefore, until sentence is imposed. There is no dissent in the authorities.[39] After some earlier discussion of the exact nature of criminal contempt, the United States Supreme Court decided[40] that appeals therein lay to this court under the statute.[41] In pursuance of the consideration just referred to, courts were bound to and did hold that sentence is a sine qua non.[42] The question being one of appellate jurisdiction it is, like all questions of jurisdiction, quite dehors action by the parties.[43] We either have or we haven't, and not having cannot act accordingly. There having been no sentence in the case at bar, the appeal must be dismissed.

 We have already somewhat extended our discussion of what we think are the applicable principles in the hope that it may prevent further litigation. It will do no harm, then, to add one further word. The record indicates that the learned referee saw fit to absent himself during the examination of the appellant witness. Five such absences appear affirmatively.[44] One of them is an occasion when his certificate indicates dissatisfaction with the testimony.[45] These positive departures being proved, we think that the rather at-

---

[37] Cherry v. Cherry, 253 Mass. 172, 148 N.E. 570.

[38] Menage v. Lustfield, 30 Minn. 487, 16 N.W. 398; Eure v. Taylor, 126 Miss. 155, 88 So. 514.

[39] Berman v. United States, 302 U.S. 211, 212, 58 S.Ct. 164, 82 L.Ed. 204; Miller v. Aderhold, 288 U.S. 206, 210, 53 S.Ct. 325, 77 L.Ed. 702; Hill v. United States ex rel. Wampler, 298 U.S. 460, 464, 56 S.Ct. 760, 80 L.Ed. 1283.

[40] Bessette v. W. B. Conkey Co., 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 997; Doyle v. London Guarantee Co., 204 U. S. 599, 27 S.Ct. 313, 51 L.Ed. 641.

[41] 28 U.S.C.A. § 225.

[42] 7 Remington on Bankruptcy, 5th Ed., § 3039.

[43] The innumerable cases are collected in 28 U.S.C.A. § 225, note 3.

[44] On May 10, 1938:
1. "Q. That is no answer. Unless you answer it I will ask the court to come down here and compel you to." Appendix p. 146
2. "Q. Then we will have to get the referee to come down here." ("At this point Mr. Bilder dispatched an assistant to summon the referee".) Appendix p. 147
3. "At this point the referee arrived." Appendix p. 149
On May 16, 1938:
4. "A. I was interested in getting the figures." ("At this point Mr. Bilder dispatched an assistant to summon the referee".) Appendix p. 167
5. "Q. I think we will take an adjournment at this time. I want to see what date the referee can give us, either Thursday or Friday of this week." Appendix p. 173

[45] Appendix, p. 31.

tenuated presumption of due performance of an official duty[46] no longer supports his absence. The learned District Judge rather minimized these somewhat unusual judicial occurrences. He drew an analogy from the cases discussing the absence of a judge during the trial of a criminal case.[47] Some of these insist upon a showing of prejudice[48] and therefore prescribe a timely objection. We think that the analogy is not close enough. The presence of a judge in a criminal case is for control of the trial and the defendant may well be able to realize when loss of that control is injuring him. Here the presence of the judge has another purpose. He has the duty of observing the witness-stand conduct of the contemnor. For upon that observation the action of the reviewing courts may very well depend. As one Circuit Court of Appeals has expressed it:

"In the case at bar we know nothing of the bankrupt, Schulman, except as he is portrayed in the printed record. The referee, on the contrary, had an opportunity to see and hear the bankrupt and observe his manner while testifying, which is an inestimable advantage in cases of this character. The testimony of a witness may sound plausible when read afterwards from a printed book and yet his conduct on the stand may have been such that no one who heard him testify believed that he was telling the truth. The referee certifies that after having taken the oath the bankrupt refused to be examined according to law and deliberately withheld facts within his knowledge as to the disposition of the property of the bankrupt's firm. Again, he certifies that the bankrupt withheld from the trustee and the court, with the deliber-

ate intention of concealing his condition, the true facts relating to the conduct of his business, his dealings with his creditors and the amount and whereabouts of his property. The referee says: 'The manner of the bankrupt, his recollection when he desired to exercise it convinced me as I watched him that where he desired to give the facts he could do so.'

"Disingenuous and evasive as his testimony appears when read, it is obvious that the opportunity to 'watch' the bankrupt gave the referee a very marked advantage in determining whether he was acting honestly. His answers 'I don't remember,' and 'What do you mean?' so often given might in some instances have been the result of a defective memory or an honest inability to understand. An appellate court may be unable to detect, under such conditions, the false from the true, the honest from the fraudulent, but any intelligent person, after observing the witness for hours on the stand could not be deceived as to his purpose." In re Schulman, 2 Cir., 177 F. 191, 192, 193.[49]

No witness would be aware of this demeanor rule and so no witness would be apt to take opportune advantage of his rights. Perhaps more technically, one might call attention to the exact language of the Act.[50] Courts construe those words in their ordinary sense and say they are equivalent to the time honored in the "presence of the court."[51] Clearly, the appellant here was not in the presence of someone who was absent when the appellant was present. So the empowering words of the statute have not been complied with.

The appeal is dismissed.

[46] 9 Wigmore on Evidence, 3rd Fd., § 2534.

[47] The cases are collected in 23 C.J.S., Criminal Law, § 972.

[48] 23 C.J.S., Criminal Law, § 972.

[49] See, also, Ohio Valley Bank Co. v. Mack, 6 Cir., 163 F. 155, 24 L.R.A.,N.S.,

184; Epstein v. Steinfeld, 3 Cir., 210 F. 236.

[50] 11 U.S.C.A. § 69.

[51] United States v. Kolodner, 3 Cir., 204 F. 240, 243; State v. Murnane, 172 Minn. 401, 215 N.W. 863, 864; Jones v. Jones, 5 Mees. & W. 523, 526; Hutchinson v. Stone, 79 Fla. 157, 84 So. 151.