In re George R. DAVITCH, Jr., Debtor.

James R. Walsh, Trustee of the
Bankruptcy Estate of George
R. Davitch, Jr., Movant,

v.

Bonnie Lou Bracken, an individual,
Bonnie Lou Bracken, as Executrix
and Testamentary Trustee of the Es-
tate of George R. Davitch, Sr. and the
Estate of George R. Davitch, Sr., Re-
spondent.

No. 01–31850–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Jan. 18, 2006.

James R. Walsh, Esq., Trustee.

Russell J. Heiple, Esq., Johnstown, PA, for Respondent.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

The chapter 7 trustee asserts that during the course of this bankruptcy proceeding, respondent Bonnie Lou Bracken was aware of debtor's bankruptcy and nonetheless distributed to debtor funds that were property of debtor's bankruptcy estate. He seeks a judgment against respondent in the amount of those distributions.

The chapter 7 trustee also requests that respondent be held in contempt and fined for not complying in a timely manner with an order of this court directing respondent to provide an accounting of the testamentary estate of the late father of debtor and respondent, of which respondent was executor.

In addition, the chapter 7 trustee asks that the order previously granting debtor a discharge be revoked in accordance with § 727(d)(2) of the Bankruptcy Code. According to the chapter 7 trustee, debtor did not disclose his right to receive the above funds and used them for his own

exclusive benefit instead of turning them over to the chapter 7 trustee for distribution to debtor's creditors.

A judgment in the amount of $31,952.54 will be entered in favor of the chapter 7 trustee and against respondent. Respondent also will be fined $2,300 for not obeying in a timely manner a lawful order of this Court. The fine shall be paid to the chapter 7 trustee for the benefit of debtor's unsecured creditors. Finally, the order granting debtor a discharge will be vacated.

— FACTS —

Respondent Bonnie Lou Bracken is the sister of debtor George R. Davitch, Jr.

Their father, George R. Davitch, Sr., died on September 24, 2001. In his last will and testament, George R. Davitch, Sr. left fifty percent of his estate absolutely and in fee simple to respondent. He left the remaining fifty percent to respondent in trust for the benefit of debtor. Respondent was directed to distribute this latter percentage of the estate to debtor in equal monthly installments over a period of five years.

The Surrogate Court of Gloucester County, New Jersey[1], issued short certificates on November 1, 1990, appointing respondent as executor and as testamentary trustee of the estate of George R. Davitch, Sr.

The estate of George R. Davitch, Sr. had assets worth approximately $80,000. The primary asset of the estate was a tract of real property located in Paulsboro, New Jersey.

After selling the real property to a third party, respondent began making monthly distributions to debtor starting in September of 2000. The last monthly distribution to debtor occurred on September 23, 2004, nearly three years *after* debtor had entered bankruptcy. Approximately a month later, on October 22, 2004, respondent distributed the remaining balance in the testamentary trustee's account to debtor by making a lump-sum payment in the amount of $8,698.54.

Debtor used the distributions he received from respondent for his own exclusive benefit. None of the funds distributed to him after he filed a bankruptcy petition remain for distribution to his creditors.

On November 23, 2001, approximately fourteen months after he began receiving monthly distributions from respondent, debtor filed a voluntary chapter 7 petition. A chapter 7 trustee was appointed shortly thereafter.

The accompanying schedules and statement of financial affairs were signed by debtor, who declared under penalty of perjury that they were true and correct to the best of his knowledge, information and belief.

Despite receiving a distribution from respondent earlier in the same month as he filed his bankruptcy petition, debtor did not list his right to receive the remaining monthly distributions from the testamentary trust established by his father as an asset of the bankruptcy estate.

Debtor falsely stated on Schedule B, for instance, that he had no interest in the estate of a decedent. He also did not list the monthly distributions as income on Schedule I. According to debtor, his sole source of income was from his employment as a bricklayer.

Debtor also did not disclose his receipt of the above monthly distributions in his statement of financial affairs. In response

---

1. George R. Davitch, Sr. was a resident of New Jersey at the time of his death.

to Question 2, for example, debtor indicated that his only income other than from employment came from unemployment compensation.

The § 341 meeting of creditors was held on January 16, 2002. While under oath, debtor gave some indication that he had a right to receive distributions from his father's testamentary estate. Exactly what debtor disclosed and the context in which he did so is not indicated in the record.

Approximately two weeks later, on January 28, 2002, debtor's bankruptcy counsel forwarded to the chapter 7 trustee all the information debtor had to that date concerning the testamentary estate of George R. Davitch, Sr. Counsel indicated in the cover letter that he had requested additional information from respondent and would forward it to the chapter 7 trustee as soon as he received it.

Not realizing that debtor was receiving and retaining for himself the above distributions from his father's testamentary estate, the court issued an order on April 3, 2002, granting debtor a discharge.

The chapter 7 trustee corresponded with counsel to the testamentary estate of George R. Davitch, Sr. on June 16, 2003, reminding counsel that any distribution debtor was slated to receive was property of his bankruptcy estate. The chapter 7 trustee requested a status report about the testamentary estate.

When his previous letter went unheeded, the chapter 7 trustee wrote a second letter to counsel to the testamentary estate on October 28, 2003. After reiterating that anything that was supposed to be distributed to debtor was property of debtor's bankruptcy estate, he inquired when the bankruptcy estate could expect to receive debtor's share of his father's testamentary estate. Once again, the chapter 7 trustee received no response.

Approximately three months later, on January 4, 2004, the chapter 7 trustee again wrote to debtor's counsel to inform him that he had not heard from counsel to the testamentary estate and inquired whether debtor's counsel had heard anything more from debtor. Counsel to debtor responded on January 24, 2004, that he had not heard from debtor since the § 341 meeting held two years earlier and also had heard nothing from counsel to the testamentary estate of debtor's father.

Because he had received no information concerning the testamentary estate of debtor's father, the chapter 7 trustee brought a motion on June 28, 2004, for an accounting by respondent of the testamentary estate. He further requested that respondent be ordered to turn over the funds which debtor was supposed to receive from respondent.

The chapter 7 trustee served on respondent at her residence a copy of the motion and the order scheduling it for a hearing. Service was made by first class mail on July 1.2004.

Respondent did not file a reply to the motion and did not appear at the hearing on the motion, which was held on August 5, 2004.

The court issued an order on August 5, 2004, directing respondent to provide an accounting of the testamentary estate within fourteen days of the date of the order. Respondent was also directed to remit to the chapter 7 trustee within that same fourteen-day period the monthly distributions debtor was slated to receive in the future from his father's testamentary estate.

The chapter 7 trustee served respondent served with a copy of the order by first class mail at her residence on August 13, 2004.

Despite receiving a copy of the order of August 5, 2004, respondent did not comply with it. As a consequence, the chapter 7 trustee brought a motion on November 22, 2004, to hold respondent in contempt for not complying with the order of August 5, 2004.

The chapter 7 trustee served respondent with a copy of the motion and the order scheduling it for a hearing at her residence by first class mail on November 24, 2004.

Respondent neither replied to the motion nor appeared at the hearing on the chapter 7 trustee's motion, which was held on January 13, 2005.

On January 14, 2005, we issued an order directing respondent to comply with the order of August 5, 2005, within fifteen days from January 14, 2004. The order further provided that if respondent failed to comply by the prescribed deadline, she would be fined at the rate of $100 per day beginning on the sixteenth day for the next forty-five days or until she complied. If respondent still had not complied by the sixty-first day, the U.S. Marshall would take respondent into custody and bring her to court to explain why she had not complied with the court's order.

In addition to service of the order by the court by first class mail at her residence, a member of the law firm to which the chapter 7 trustee belonged served a copy of the order on respondent in person at her residence on January 24, 2005.

On February 9, 2005, the chapter 7 trustee certified to the court that respondent had not complied with the order of January 14, 2005.

Respondent finally stopped stonewalling the chapter 7 trustee and filed an accounting of the testamentary estate with the court on February 22, 2005. Respondent denied acting willfully in failing to file the accounting by the prescribed deadline and requested that she be "relieved" from the fine that was prescribed by the order of January 14, 2005. She had been advised, respondent claimed, that it was debtor's responsibility—not hers—to inform the chapter 7 trustee of his receipt of the above distributions from their father's testamentary estate.

A status conference with respect to respondent's tardy compliance with the order of January 14, 2005, was held on April 7, 2005. The court was informed for the first time at the status conference that debtor had received in excess of $30,000 from the testamentary estate of his father after debtor had commenced his bankruptcy case.

We issued a rule to show cause on April 8, 2005, directing respondent to show why she should not be sanctioned for disobeying lawful orders of court. We also issued a rule to show cause that same day directing debtor to show why his discharge should not be revoked for failing to report an estate asset and using it for his own personal benefit.

An evidentiary hearing on both rules was held on November 18, 2005. Respondent testified at length under oath in an attempt to explain away her failure to comply with the above order. Debtor invoked the Fifth Amendment and refused to testify lest he make self-incriminating statements while under oath.

The parties have submitted post-hearing briefs and the above matters are now ready for decision.

— DISCUSSION —

— I —

■ The chapter 7 trustee seeks in accordance with § 543 of the Bankruptcy Code to recover from respondent the total amount of the distributions she made as

testamentary trustee to debtor after learning that debtor was in bankruptcy.[2]

Section 543 of the Bankruptcy Code provides in pertinent part as follows:

(a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from ... property of the debtor or property of the estate in the possession, custody or control of such custodian ....

(b) A custodian shall—

(1) deliver to the trustee any property of the debtor held by ... such custodian ... that is in such custodian's possession, custody or control on the date that such custodian acquires knowledge of the commencement of the case; and

(2) file an accounting of any property of the debtor ... that, at any time, came into the possession, custody, or control of such custodian. The court, after notice and a hearing, shall—....

(3) surcharge such custodian ... for any improper ... disbursement ....

(c) The court, after notice and a hearing shall....

(3) surcharge such custodian .... for any improper ...disbursement....

11 U.S.C. § 543.

■ To paraphrase this provision as it applies to this proceeding, respondent was prohibited upon learning of debtor's bankruptcy from further distributing to debtor funds over which respondent had control as testamentary trustee. As of that time, respondent was required to deliver those funds to the chapter 7 trustee and to pro-vide an accounting of the property she controlled as testamentary trustee for debtor's benefit. See *In re Lizeric Realty Corp.* 188 B.R. 499, 504 (Bankr.S.D.N.Y. 1995).

■ Section 543 of the Bankruptcy Code is "triggered" only if: (1) a custodian has possession, custody, or control of property; and (2) that property is property of the debtor. *Sovereign Bank v. Schwab,* 414 F.3d 450, 454 (3d Cir.2005).

Respondent does not dispute that she qualifies as a custodian under 11 U.S.C. § 101(11) of the Bankruptcy Code. She was the testamentary trustee of the estate of George R. Davitch, Sr. and was required by his last will and testament to distribute to debtor his one-half interest in the estate over a fixed period of time.

■ Moreover, those funds which remained to be distributed to debtor were property of his bankruptcy estate. As the beneficiary of the trust, debtor had at least an equitable interest in those funds. Because debtor had at least an equitable in the funds, the right to receive them became an asset of the bankruptcy estate when debtor filed a bankruptcy petition. 11 U.S.C. § 541(a)(1).

It is not disputed that respondent had no knowledge on November 23, 2001, that debtor had filed a bankruptcy petition on that date. Debtor did not informally notify respondent of that fact. Because respondent was not included on the mailing matrix, she also was not formally notified of debtor's bankruptcy status when notice was sent to everyone listed on the mailing matrix.

---

**2.** The chapter 7 trustee does not seek to recover any payments respondent made to debtor before debtor filed a chapter 7 petition on November 23, 2001, or any payments she made to debtor after he filed his bankruptcy petition but before she learned that debtor was in bankruptcy. Section 543 of the Bankruptcy Code does not apply to a custodian who disposes of property of the debtor before learning of debtor's bankruptcy. *Foust v. McNeill (Matter of Foust),* 310 F.3d 849, 854 (5th Cir.2002).

Respondent did, however, subsequently come to learn of debtor's bankruptcy. Respondent, we conclude, first became aware of debtor's bankruptcy case by no later than January 28, 2002.

Debtor made a disclosure of some sort at the § 341 meeting, which took place on January 16, 2002, concerning his interest in the above distributions from his late father's testamentary estate. Exactly what he disclosed about it is not clear from the record.

On January 28, 2002, twelve days later, counsel to debtor provided the chapter 7 trustee with all the information debtor allegedly had concerning his father's testamentary estate. In the cover letter, counsel stated that he had requested additional information from respondent and would forward to the chapter 7 trustee anything counsel received from respondent.[3] Respondent's denial that she was contacted by debtor's counsel concerning this is not credible.

We conclude in light of the foregoing that respondent violated § 543(a) of the Bankruptcy Code by making distributions to debtor long after she found out debtor was in bankruptcy. Respondent continued making monthly distributions to debtor until September of 2004, twenty-one months after so learning. On October 22, 2004, respondent disbursed to debtor the remaining balance of $8,698.54 in the testamentary trustee's account.

Moreover, we also conclude that respondent violated § 543(b)(1) of the Bankruptcy Code, which required her to deliver to the chapter 7 trustee all funds remaining in the testamentary trustee's account upon learning of debtor's bankruptcy. As was just indicated, debtor continued making distribution to debtor until the last of the funds in the testamentary trustee's account were disbursed in October of 2004. Funds remaining in that account as of January 28, 2002 were not delivered to the chapter 7 trustee.

We need not consider at this point in our analysis whether respondent also violated § 543(b)(2) before considering what should be done about it. The requirements imposed on respondent by § 543(b)(1) and § 543(b)(2) are conjunctive; they are not disjunctive. Respondent was required upon learning of debtor's bankruptcy to deliver the funds remaining in the testamentary trustee's account and to file an accounting. Failure to comply with either of these provisions constitutes a violation of § 543(b).

Respondent testified at trial that she did not turn over the funds to the chapter 7 trustee because counsel to the testamentary estate of George R. Davitch, Sr. advised her that she need not do so. According to respondent, counsel to the testamentary estate told her that "everyone wants it". Such testimony is inadmissible hearsay. Moreover, it is not credible. Finally, respondent did not call counsel to the testamentary estate to testify at trial that she had so advised respondent. Had counsel so advised her, we expect respondent would have subpoenaed counsel and elicited such testimony under oath.

■ Even if counsel had so advised respondent under oath at trial, such testimony is not relevant. Section 543 does not provide for an exception to the requirement that a custodian deliver property of the debtor to the chapter 7 trustee upon learning of debtor's bankruptcy where the custodian fails to deliver it because some-

---

**3.** It should be noted that counsel to respondent did not object at trial to the admissibility of this letter from debtor's counsel.

one advised the custodian that they need not do so.

■ Having determined that respondent failed to comply with § 543(a) and § 543(b)(1), it remains to be determined what recourse is available to the chapter 7 trustee as a result of that non-compliance. Section § 543(c)(3) provides that this court may "surcharge" the custodian for any improper disbursement of property of the debtor.

■ The term "surcharge" is not defined anywhere in the Bankruptcy Code. When a word is not defined by a statute, it normally should be construed according to its ordinary and common meaning. *Smith v. U.S.*, 508 U.S. 223, 229, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138 (1993). In common parlance, the word "surcharge" is, among other things, a charge upon a person in respect of an amount improperly disbursed by that person. *Oxford English Dictionary* (Second Edition 1989).

■ Applying this definition of the term "surcharge", we construe § 543(c)(3) as providing that respondent must be charged for the full amount of the disbursements she improperly made to respondent after learning on January 28, 2002, at the latest, that debtor was in bankruptcy. The disbursements respondent made to debtor after January 28, 2002, total $31,952.54. A judgment in this amount therefore will be entered in favor of the trustee and against respondent.

— II —

On more than one occasion prior to June 28, 2004, the chapter 7 trustee requested from counsel to the testamentary estate of George R. Davitch, Sr. information concerning the testamentary trust of which respondent was trustee. Counsel turned a deaf ear to the requests.

On June 28, 2004, the chapter 7 trustee brought a motion to compel respondent to file an accounting of the testamentary estate and to compel delivery of the disbursements debtor was scheduled to receive after respondent learned of debtor's bankruptcy filing.

We issued an order on August 5, 2005, after a hearing which directed respondent to provide within fourteen days of August 5, 2004, an accounting of the testamentary estate. Respondent also was directed to turn over to the chapter 7 trustee, within the same period of time, the funds debtor was slated to receive after commencement of his bankruptcy case.

When respondent failed to comply, the chapter 7 trustee brought a motion on November 22, 2004, to hold respondent in contempt for disobeying the order of August 5, 2004.

We issued another order on January 14, 2005, which directed respondent to comply with the order of August 5, 2004, within fifteen days—by January 29, 2005. If respondent failed to comply in a timely manner, she would be fined at the rate of $100 per day beginning on the sixteenth day until she complied. If there was no compliance by the sixty-first day, the order stated that the U.S. Marshall would take respondent into custody and to bring her before this court to explain why she had not complied with a lawful order of the court.

On February 22, 2005, twenty-three days after January 29, 2005, respondent finally relented and provided the accounting that was required by the order of August 5, 2005. Respondent denied acting willfully in failing to provide the accounting by the prescribed deadline and requested "relief" from the fine imposed upon her.

A status conference took place on April 7, 2005, concerning the order of January 14, 2005, and respondent's request for "relief". At the conference, the court was advised for the first time that respondent had disbursed in excess of $30,000 to debtor since the commencement of his bankruptcy case and that nothing remained in the testamentary account maintained by respondent.

We issued a rule the following day—i.e., on April 8, 2005—directing respondent to show cause why she should not be held in contempt. We also issued a rule directing debtor to show cause why his discharge should not be revoked. An evidentiary hearing on both rules took place on November 18, 2005.

The chapter 7 trustee asserts that respondent should be held in civil contempt for not complying with the orders of August 5, 2004, and January 14, 2005. He proposes as an appropriate sanction that respondent be fined in accordance with the order of January 14, 2005—i.e., at the rate of $100 per day—for not providing an accounting until twenty-three days after the deadline for doing so had passed.

■■■■ There are two types of contempt: criminal and civil. Whether a sanction for contempt is criminal or civil depends on the character of the sanction imposed, not on the subjective intent of the court. *Hicks v. Feiock*, 485 U.S. 624, 636, 108 S.Ct. 1423, 1432, 99 L.Ed.2d 721 (1988). A fine is civil if it serves to coerce a defendant into complying with a court's orders or to compensate the complainant for losses sustained as a result of the defendant's non-compliance. *U.S. v. Mine Workers*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). A fine which is punitive and vindicates the court's authority is criminal. *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911).

■■■ Whereas civil contempt is coercive and looks to the future, criminal contempt punishes past behavior and affords no *locus penitentiae*—i.e., opportunity to repent or change one's mind. *In re Eskay*, 122 F.2d 819, 823 (3d Cir.1941).

■■■ The requirements of civil contempt are: (1) a valid court order exists; (2) the defendant had knowledge of the order; and (3) the defendant disobeyed the order. *Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir.1995).

■■■ It is not disputed that requirements (1) and (3) are satisfied in this instance. The orders of August 5, 2004, and January 14, 2005, undoubtedly are valid. Moreover, respondent unquestionably did not comply with the order of January 14, 2005, by providing an accounting no later than January 29, 2005. It was provided twenty-three days after the deadline had passed.

Respondent seemed to suggest at trial that she had no knowledge of these orders until well after the deadline established in the order of January 14, 2005, had passed. This suggestion is totally without merit. Evidence presented at trial overwhelmingly establishes that debtor knew of both orders and had ample opportunity to meet the deadline established in the order of January 14, 2005.

A copy of the order of August 5, 2004, was served on respondent by the chapter 7 trustee by first class mail at her residence on August 13, 2004. The court also served respondent at her residence with a copy of the order by first class mail on August 11, 2004.

The chapter 7 trustee also served respondent with a copy of the order of January 14, 2005, by first class mail on January 24, 2005. A member of the law firm to which the chapter 7 trustee belongs also

served respondent in person at or about that time with a copy of the order.

In a feeble attempt to excuse her non-compliance with these orders, respondent testified that counsel to the testamentary estate had advised that she need not comply. We previously concluded that even if respondent was so advised, this was not a defense to a claim that one has violated § 543 of the Bankruptcy Code. The same holds true in the case of civil contempt. The fact that one relies in good faith on the advice of counsel in failing to comply with a court order is not a defense to an action for civil contempt. *In re Eskay*, 122 F.2d at 822 n. 17. A person who has knowledge of a court order and does not comply with it on the advice of counsel does so at his or her own peril.

We conclude in light of the foregoing that respondent was aware of the orders of August 5, 2004, and January 14, 2005, and that all of the requirements for imposing liability for civil contempt are satisfied in this instance. Respondent will be fined in accordance with the order of January 14, 2005, at the rate of $100 per day for each of the twenty-three days that she was not in compliance with the order of January 14, 2005. The fine shall be paid directly to the chapter 7 trustee to compensate pre-petition creditors.

— III —

Debtor continued receiving distributions from the testamentary trust set up in his father's last will and testament long after he commenced his bankruptcy case. We previously determined that these disbursements totaled $31,952.54 and that debtor used the funds for his personal benefit. Nothing remains for his creditors. This information that this had occurred was not brought to the court's attention until well after debtor had received a discharge.

When asked by the court at trial what relief he sought with respect to debtor, the chapter 7 trustee stated that debtor's discharge should be revoked pursuant to § 727(d)(2) of the Bankruptcy Code, which provides as follows:

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—. . . .

(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee . . . .

11 U.S.C. § 727(d)(2).

Bankruptcy has two overarching purposes, one equitable and the other rehabilitative. It provides a means for efficient distribution of a debtor's remaining assets to creditors. In addition, it provides an *honest* debtor a "fresh start" by relieving the debtor of outstanding debts and providing debtor with an opportunity to reorganize his or her affairs. *Westmoreland Human Opportunities v. Walsh*, 246 F.3d 233, 251 (3d Cir.2001).

Bankruptcy is not only an ameliorative right of a debtor; it also provides creditors with a remedy. *Boston Univ. v. Mehta (In re Mehta)*, 310 F.3d 308, 311 (3d Cir.2002). Providing a debtor a "fresh start" is not always of paramount importance and on occasion must take a back seat to protecting the rights of creditors. *Id.* Because providing a debtor a "fresh start" nonetheless is an overarching concern, however, the statutory provisions of § 727 generally must be construed narrowly against creditors and in favor of the debtor. *Id.*

Were § 727(d) "in play" in this instance, the chapter 7 trustee surely would prevail and we would not hesitate to revoke debtor's discharge on that basis. The post-petition distributions debtor received and then squandered on himself qualify as "property of the estate". Moreover, we have no doubt that debtor knowingly and fraudulently failed to report his entitlement to the distributions and knowingly and fraudulently failed to surrender them to the chapter 7 trustee.

■■■ Having said all of this, we nonetheless conclude after considerable deliberation that the chapter 7 trustee may not rely on § 727(d)(2) in this instance.

Courts have consistently have held, as we have indicated, that § 727 must be construed narrowly against creditors and in favor of a debtor in bankruptcy. Section expressly specifies that a trustee, a creditor, or the U.S. trustee may request revocation of a debtor's discharge. The court itself is not listed among those who may do so.

■■■ Relying on the plain, unambiguous language of § 727(d), courts have consistently held that revocation of a debtor's discharge may be requested *only* by a trustee, a creditor, or the U.S. trustee. *E.g., In re Nader*, 1998 WL 767459, *2 (Bankr.E.D.Pa.1998). A debtor, for instance, does not have standing to request revocation of his or her own discharge. *E.g., Markovich v. Samson (In re Markovich)*, 207 B.R. 909, 911–12 (9th Cir. BAP 1997). The same reasoning would seem to compel the conclusion that a bankruptcy court also may not seek on its own initiative to revoke a debtor's discharge in accordance with § 727(d) of the Bankruptcy Code.

Our review of the record indicates that the idea of revoking debtor's discharge originated with the court when it *sua sponte* issued a rule on April 8, 2005, directing debtor to show cause why his discharge should not be revoked. We issued the rule the day after a status conference took place in which we learned for the first time that debtor continued receiving distributions from respondent after debtor had filed his bankruptcy petition.

■■■ At no time did the chapter 7 trustee file anything wherein he requested revocation of debtor's discharge. His statement at the conclusion of trial on November 18, 2005, does not suffice as a request for revocation of debtor's discharge pursuant to § 727(d). A proceeding to revoke a discharge must be brought as an adversary action. *Federal Rule of Bankruptcy Procedure 7001(4)*. This in turn requires that a complaint be filed with the court. *Federal Rule of Bankruptcy Procedure 7003*. The chapter 7 trustee filed no such complaint but relied instead on the rule to show cause we issued on April 8, 2005, in asking that debtor's discharge be revoked.

Although the required procedural basis for revoking debtor's discharge pursuant to § 727(d) was not in place, this does not mean that the discharge order may not be vacated.

There are at least two alternative bases of which we are aware for vacating the discharge order.

■■■ First, a federal court has inherent power to vacate a judgment or order it previously issued when the judgment or order was obtained as the result of fraud perpetrated upon the court. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991).

■■■ The order granting debtor a discharge was procured as the result of fraud perpetrated by debtor upon this court. We would not have granted debtor a discharge had we known at that time that he

had not disclosed his right to receive distributions from the testamentary trust established by his late father, had continued receiving them after becoming a debtor in bankruptcy, and then had spent the funds for his exclusive benefit. As was indicated, the funds were dissipated and nothing remains from those distributions for distribution to debtor's creditors. We do not hesitate to conclude that debtor received a discharge to which he clearly was not entitled by "pulling a fast one" on the court in concealing these facts.

Alternatively, we conclude that we have the power to reconsider and to vacate the order of discharge pursuant to Federal Rule of Civil Procedure 60(b), which applies to bankruptcy proceedings by virtue of Federal Rule of Bankruptcy Procedure 9024.

Rule 60(b) provides in relevant part as follows:

> On motion and upon such terms as are just, the court may relieve a party ... from ... [an] order ... for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of a party; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (3) not more than one year after the ... order ... was entered.

■■■■■■ Discharge orders are not "cast in stone" and are not immune from reconsideration. A bankruptcy court may reconsider the propriety of a discharge pursuant to Rule 60(b), provided the bankruptcy proceeding has not reached "final resolution" and restrictions imposed by applicable statutes and rules are adhered to. *Disch v. Rasmussen*, 417 F.3d 769, 775 (7th Cir.2005).

■■■ Courts disagree as to whether relief under Rule 60(b) may be granted on a *sua sponte* motion by the court.

The Sixth and Tenth Circuits have held that such relief is not permissible. See *U.S. v. Pauley*, 321 F.3d 578, 582 (6th Cir.2003); *Dow v. Baird*, 389 F.2d 882, 884–85 (10th Cir.1968).

The Second, Fourth, Fifth and Ninth Circuits have held that such relief is permissible. See *Fort Knox Music, Inc. v. Baptiste*, 257 F.3d 108, 111 (2d Cir.2001); *Kingvision Pay–Per–View v. Lake Alice Bar*, 168 F.3d 347, 351 (9th Cir.1999); *McDowell v. Celebrezze*, 310 F.2d 43, 44 (5th Cir.1962); *U.S. v. Jacobs*, 298 F.2d 469, 472 (4th Cir.1961). *See also Young v. U.S.*, 60 Fed.Cl. 418, 427 (Fed.Cl.2004).

It remains an "open question" in the Eighth Circuit. See *4:20 Communications, Inc. v. Paradigm Co.*, 336 F.3d 775, 779 (8th Cir.2003).

Our own research indicates that the Third Circuit has not addressed the question and that it also is an "open question" in this Circuit.

While the arguments on both sides of the issue have considerable *gravitas*, the arguments raised by the Second, Fourth, Fifth and Ninth Circuits in our estimation are more persuasive than those presented by the Sixth and Tenth Circuits. We believe that, if the Third Circuit were called upon to decide the question, it would reject the arguments put forth by the Sixth and Tenth Circuits.

We therefore conclude that we had authority to raise *sua sponte* the question whether the order granting debtor a discharge should be vacated pursuant to Rule 60(b). The failure of the chapter 7 trustee to commence an adversary action to revoke debtor's discharge in accordance with § 727(d)(2) does not necessarily present an

obstacle to vacation of the order on the court's own motion.

Of the various grounds for reconsidering and vacating the discharge order, we conclude that Rule 60(b)(6) applies and provides a basis for doing so.[4]

As we have indicated several times already, we were not aware when the discharge order was issued that debtor was receiving and using for his exclusive benefit post-petition disbursements from respondent which should have been turned over to the chapter 7 trustee. Had we been aware of this prior to April 3, 2002, we would not have issued the discharge order.

Permitting the discharge order to stand would allow debtor to enjoy the salutary effects of a "fresh start" while doing violence to the equally important principle that property of the estate which has not been exempted shall be made available for distribution to debtor's creditors to pay their claims.

Debtor cannot have it both ways. In particular, he may not unlawfully retain the funds in question for his exclusive benefit while also receiving a discharge. The appropriate course of action under the circumstances presented is vacation of the discharge pursuant to Rule 60(b).

---

4. We are satisfied that sufficient grounds also exist under Rule 60(b)(1) and (3) for vacating the discharge order. A motion to vacate brought under these provisions, however, must be brought within one year of entry of the order. There is no such limitation for motions brought under Rule 60(b)(6). Such motions need only be brought "within a reasonable time". While the rule to show cause was not issued until some three years after issuance of the discharge order, we issued it the day after learning for the first time at a status conference that debtor had received approximately $30,000 from respondent after commencement of this bankruptcy case.