**In re ROTHCHILD'S JEWELERS, INC., Debtor.**

No. 03–41187–DOT.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Sept. 27, 2004.

Paul McCourt Curley, Richmond, VA, for Debtor.

## MEMORANDUM OPINION

DOUGLAS O. TICE, JR., Chief Judge.

This issue comes before the court on the separate motions of Anne Hinkler Hutchins and the chapter 7 trustee for an award

of sanctions against Marvin Harris for his bad faith filing of the bankruptcy petition in this case. For reasons set forth below, the court will both grant the motions and award monetary sanctions.

*Findings of Fact.*

On November 26, 2003, the day before Thanksgiving, Marvin A. Harris filed a voluntary petition under Chapter 7 of the Bankruptcy Code on behalf of Rothchild's Jewelers, Inc. On that date, Rothchild's was engaged in the fine jewelry business in Richmond, Virginia. Rothchild's was operated by Anne Winkler Hutchins. There was a long history of disputes between Hutchins and Harris at the time of the filing of this bankruptcy case.

On November 26, 2003, Roy M. Terry Jr. was appointed interim Chapter 7 trustee in the Rothchild's bankruptcy case. Harris, through counsel, advised the trustee that the inventory of the jewelry store was at risk under its current management. The trustee consulted with the United States Trustee and determined that the store should be secured and an inventory and appraisal be conducted. The trustee, on an emergency basis, then obtained the services of 1) Motley's Group to provide appraisal and inventory services to the estate, 2) Keiter, Stephens, Hurst, Gary and Shreaves, P.C., to provide accounting services to the estate, and 3) Durrette-Bradshaw, P.C. to provide legal services to the estate. In addition, the trustee filed a motion to authorize the business to be continued to permit a going out of business sale.

On November 26, 2003, representatives of the trustee, Motley's, Keiter Stephens and DurretteBradshaw met at Rothchild's to obtain possession of its assets pursuant to 11 U.S.C. § 704. The locks and alarm system were changed, mail and bank accounts were transferred to the trustee, and an initial inventory was conducted. The premises were secured. Over the next several days, the inventory and appraisal were continued by Motley's, and Durrette-Bradshaw prepared the various expedited motions to employ the professionals whose services the trustee had obtained. DurretteBradshaw also conducted legal and factual research regarding title to consigned jewels, as well as responding to contacts from consignors and customers.

On December 1, 2003, Hutchins filed a motion to dismiss the bankruptcy case. An expedited hearing was held on December 4, 2003. At hearing, evidence was presented relative to the right of Harris to file the bankruptcy petition. The evidence as revealed in the pleadings and proffered in court revealed that Hutchins was the owner of Rothchild's Jewelers, Inc. On April 25, 1997, she had entered into an agreement with Harris whereby she and Rothchild's would sublet retail space from Harris and allow him to display his merchandise in their retail jewelry store. In return, Harris was to give business advice to Rothchild's and would also guarantee a bank loan from First Union in the amount of $100,000.00.[1] As a part of the transaction, Hutchins also pledged to Harris her shares of common stock in Rothchild's, Inc., as security for her obligations. There were continuing disputes between the parties, culminating in February of 2003, when Harris allegedly seized some of the Rothchild's inventory and locked Rothchild's out of the store. Rothchild's sought an injunction from the Circuit Court for the City of Richmond. The

---

1. This note appears to have been rolled over several times and the amount of the loan increased.

injunction was granted, with Harris being ordered to return the inventory and readmit Rothchild's to the store premises "until such time as Rothchild is lawfully evicted." Order entered February 27, 2003, Case Nos. CH03–225 & CH03–226, of which the court takes judicial notice. Noteworthy, however, is the fact that in its order, the circuit court also ordered Rothchild's to furnish Harris a daily inventory of its merchandise sold and to permit Harris access to the store one time per day in order to view the inventory.

At hearing on the motion to dismiss the bankruptcy case for bad faith, Harris testified that he caused the stock in Rothchild's to be signed over to him and that he put Rothchild's into bankruptcy because Hutchins owed him a substantial sum, and there was significant debt outstanding with the bank. After hearing the arguments of the parties, this court ruled from the bench that the petition had been filed in bad faith and granted the motion to dismiss, further commenting that the parties had serious state law issues that should be handled in the state courts.

At the conclusion of the hearing, the trustee requested that he be permitted ten days in which to file a motion for sanctions to recover costs and fees incurred by himself and his professionals. The court indicated that sanctions motions would be considered. An order was entered on December 8, 2003, dismissing the case.

The trustee filed a motion for sanctions on December 18, 2003. A similar motion was filed by Hutchins on December 19, 2003. Hearing on the motions was held February 24, 2004, at which the court reserved ruling.

The trustee claims fees and expenses incurred during the tenure of his appointment as follows:

| | Fees | Expenses | Total |
| --- | --- | --- | --- |
| Trustee | $ 5,877.50 | $ 00.00 | $ 5,877.00 |
| Counsel for Trustee | 6,564.00 | 00.00 | 6,564.00 |
| Accountant (Nov.) | 1,062.50 | 00.00 | 1,062.50 |
| Accountant (Dec.) | 1,493.75 | 28.50 | 1,522.25 |
| Auctioneer | 2,375.00 | 398.00 | 2,773.00 |
| Total | $17,382.75 | $426.50 | $17,809.50 |

In connection with her motion to dismiss the case, Hutchins claims legal fees and expenses totaling $6,278.47.

*Discussion and Conclusions of Law.*

■ As revealed above, Harris and debtor's owner, Hutchins, had been engaged in a dispute over their contractual arrangements relating to debtor's retail business. Harris, who held a pledge of the corporate stock, took matters into his own hands by causing the stock to be signed over to him, whereupon he caused debtor to file bankruptcy without the consent of Hutchins. His actions were in violation of a previous order by a City of Richmond court to return the store premises to Hutchins.

The court finds that Harris's filing of a bankruptcy petition to effect a civil remedy in his dispute with debtor and Hutchins was a blatantly improper use of the Bankruptcy Code. His conduct led the court to dismiss the case as a bad faith filing, and his conduct is a basis for the court to sanction him for the damages that resulted from the filing.[2]

Both the trustee and Hutchins have filed motions for sanctions against Harris and seek recovery of their fees and costs in-

2. Some bankruptcy courts have held that the imposition of sanctions for a bad faith bankruptcy filing requires clear and convincing evidence. The evidence here rises to that standard. *See In re St. Stephen's 350 East 116th St.,* 313 B.R. 161 (Bankr.S.D.N.Y.2004); *In re Intercorp Int'l., Ltd.,* 309 B.R. 686, 692–93 (Bankr.S.D.N.Y.2004). The court's rulings in this bankruptcy case express no view as to the parties' ongoing civil dispute.

curred in connection with the bad faith Rothchild's filing. Harris has responded to the motions by asserting that the court has no personal or subject matter jurisdiction over him. Harris also argues that the actions taken by the trustee and his professionals were largely unnecessary because the trustee was aware that a motion to dismiss might be filed. He further argues that Hutchins is not entitled to an award of sanctions because she comes to the court with "unclean hands."

## PERSONAL JURISDICTION

■ Harris has asserted that the court has no personal jurisdiction over him because he never appeared individually in the bankruptcy case and was not a party in the case. However, the documents filed in the bankruptcy case reveal that Harris himself executed the voluntary bankruptcy petition, listed himself as the debtor's sole director and shareholder, and designated himself the sole agent to represent the company in bankruptcy. At hearing on the motion to dismiss, there was considerable testimony concerning Harris's right to file the petition. This is an issue that need not be considered because the court has already held the case was filed in bad faith regardless of Harris's right to file it. What is undisputed is that he caused the petition to be filed.

This issue has been addressed by the Tenth Circuit in *Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd.)*, 40 F.3d 1084 (10th Cir.1994). In that case, the court held that the inherent powers of the bankruptcy court as embodied in § 105 of the Bankruptcy Code[3] authorized the bankruptcy court to impose sanctions for

bad faith filing against the president and sole shareholder of the debtor corporation. *Id.* at 1090.

■ The court's power to sanction behavior that abuses the legal system is not limited solely to parties. In *Lockary v. Kayfetz*, 974 F.2d 1166, 1169–70 (9th Cir. 1992), the Ninth Circuit upheld the district court's imposition of sanctions on the Pacific Legal Foundation, an entity that never made an appearance in the case but was, in the court's view, responsible for substantial abuse of the court system because it controlled the litigation. That position derives from the holding of the Supreme Court in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), in which the Court stated that "requiring a court first to apply Rules and statutes containing sanctioning provisions to discrete occurrences before invoking inherent power to address remaining instances of sanctionable conduct would serve only to foster extensive and needless satellite litigation, which is contrary to the aim of the Rules themselves." *Id.* at 51, 111 S.Ct. 2123.

Here, as in *Lockary*, it would be detrimental to the legal system to allow individuals to manipulate corporations for improper purposes without some mechanism in place to sanction that behavior. Because the court has found that the filing of the petition was in bad faith, that bad faith is imputed to Harris. Accordingly, he must be held responsible for the consequences of his behavior, and sanctions are appropriate.

■ Harris also argues that he has not been properly served with these motions.

---

**3.** Section 105 provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).

The argument is baseless. Since this is a bankruptcy case that was initiated by Harris causing the petition to be filed, it is disingenuous of him to insist that service to him follow the strictures of Rule 7004 of the Rules of Bankruptcy Procedure, governing the initiation of an adversary proceeding. This dispute does not fall under any of the categories listed as an adversary proceeding in Rule 7001. Rather, the issue is governed by the provisions of Rule 7005, entitled "Service and Filing of Pleadings and Other Papers." That rule provides that service on a party represented by an attorney is properly made on the attorney. The rule embodies the principal that once a party is engaged in litigation and has employed an attorney to represent him, notice to him is sufficient if it is sent to his attorney. Clearly that is the case with Harris. He placed himself within the jurisdiction of this court by causing the bankruptcy petition to be filed. He appeared in the case to testify at hearing on December 4, 2003, concerning the bad faith issue. He has been integrally involved in this entire process, and service to his attorney is sufficient service as to him.

## SUBJECT MATTER JURISDICTION

■ Harris has also contested the subject matter jurisdiction of this court, arguing that because the case was dismissed, the court no longer had jurisdiction over the sanctions issue. That is not the case. The Supreme Court has held that a voluntary dismissal of a cause of action under Fed.R.Civ.P. 41(a)(1)(I) did not deprive the district court of jurisdiction over a Rule 11 motion for sanctions. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). The Court went on to note that "it is well established that a federal court may consider collateral issues after an action is no longer pending." *Id.* at 395, 110 S.Ct. 2447.

It would be an absurd result if the court were to dismiss a bankruptcy case because it was filed in bad faith but could not sanction the bad faith behavior because the case had been dismissed. The court thus follows the direction of the Supreme Court in *Cooter & Gell* and finds that residual jurisdiction exists to sanction a bad faith filing. These motions were not brought on the basis of Rule 11, but the inherent powers of the bankruptcy court under § 105 of the Bankruptcy Code are the basis of the residual jurisdiction.

■ In addition, at hearing on dismissal the court remarked from the bench that any motions for sanctions by the trustee or Hutchins would be considered. This impliedly reserved jurisdiction to address those issues even after the case was dismissed.

## FEES

*A. Chapter 7 trustee and trustee's professionals*

■ Section 330(a) of the Bankruptcy Code authorizes the court to award "reasonable compensation for actual, necessary services" to a trustee or a professional person employed by the trustee. 11 U.S.C. § 330(a). Harris argues that the fees and expenses of the trustee and his professionals should be disallowed as unreasonable and unnecessary because the trustee had been advised that a motion to dismiss would probably be forthcoming and therefore should have limited his actions with respect to Rothchild's to locking the doors of the store until the issues were decided in court. This argument is without merit. The trustee judiciously exercised his authority in this case. Before any actions were taken, he conferred with the United States Trustee and outlined a plan of action. He had been advised that there was a problem with the safety of the inventory, and he took reasonable steps to protect that inventory. In addition, he

was faced with a potential loss of value of the inventory because of the timing of the petition. The petition was filed on the day before Thanksgiving and a delay in re-opening the store for business could have caused the loss of income from Christmas sales. Such a loss would have been detrimental to the business and thus also to creditors of Rothchild's. Additionally, it would have been unreasonable for the trustee to stay his hand just because the debtor had advised that a motion to dismiss *might* be forthcoming. Trustees should not be required to choose their actions based upon speculation as to how a case might proceed.

In addition, trustees and the professionals hired by trustees should have relative certainty that they will be compensated. In this case, the trustee and the professionals abandoned their own personal interests the day before Thanksgiving in order to assist the trustee in his efforts to secure the Rothchild's inventory. They might have been less willing to do so had they thought that they might not be compensated for their assistance. The trustee and his professionals should be able to take reasonable steps to fulfill their duties without having to consider their potential compensation as a factor. Therefore, the fees and expenses of the trustee and his professionals will not be disallowed as unnecessary.

Having determined that it was necessary for the trustee and his professionals to incur fees and expenses, the court must next examine the reasonableness of the amounts requested. Attached to the trustee's sanctions motion are the detailed fee statements of the trustee and his professionals in amounts as previously set out. Harris has not taken issue with any specific charges. DurretteBradshaw requests total fees and expenses of $6,564.00. The trustee requests $5,887.50 based upon his regular attorney time charges.

 In the Fourth Circuit, attorney's fees are to be evaluated by the lodestar method, under which various factors are applied to determine the attorney's reasonable rate and the reasonable number of hours. *See Equal Employment Opportunity Comm'n v. Service News Co.,* 898 F.2d 958, 965 (4th Cir.1990). After application of these factors, the product of reasonable hours and a reasonable rate constitutes the lodestar figure. *See In re Great Sweats, Inc.,* 113 B.R. 240, 241–42 n. 1 (Bankr.E.D.Va.1990).[4]

The requested hourly charges appear reasonable here. In particular, the time limitations imposed by the circumstances likely drove up the charges.

 The court's only reservation about DurretteBradshaw's bill is that in some

---

4. The 12 factors to be considered on the reasonableness of an attorney's fee include:

 1) the time and labor expended;
 2) the novelty and difficulty of the question raised;
 3) the skill required to properly perform the services;
 4) the attorney's opportunity costs in pressing litigation;
 5) the customary fee for like work;
 6) the attorney's expectations at the outset;
 7) the time limitations imposed by client or circumstances;
 8) the amount in controversy and results obtained;

 9) the experience, reputation and ability of the attorney;
 10) the undesirability of the case within the local legal community;
 11) the nature and length of the professional relationship between attorney and client; and
 12) attorney's fee awards in similar cases. *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 n. 28 (4th Cir.1978), *cert.denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). In *Great Sweats,* Judge Shelley stated that the Fourth Circuit approach uses a "hybrid of the lodestar and 12–factor tests." 113 B.R. at 241.

instances the charges appear to cross over to areas that are trustee functions. This raises the issue of whether the fee request includes charges for services that are not legal services but which should have been performed by the trustee pursuant to the duties prescribed by Bankruptcy Code § 704. *See U.S. Trustee v. Porter, Wright, Morris & Arthur (In re J.W. Knapp Co.),* 930 F.2d 386, 387–88 (4th Cir.1991); 3 COLLIER ON BANKRUPTCY ¶¶ 328.04, 330.03[2][b][I] (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2004). The court recognizes that the urgency of the situation was a factor requiring the firm's attorneys to perform trustee functions. However, a modest adjustment of the fee will be made because of the apparent crossover between legal services and trustee duties. The court will allow Durrette-Bradshaw's request in a reduced amount of $5,000.00.

■ Ordinarily, a chapter 7 trustee's compensation is based upon the statutory schedule set out in Code § 326(a). However, because the fee request here represents an award of sanctions, the trustee will be allowed the full amount of his attorney time charges.

Likewise, the court finds reasonable the charges and expenses claimed by the trustee's accountant and the auctioneer, and these will be allowed.

### B. Hutchins

■ Harris has objected to the fees incurred by Hutchins because he alleges that she comes to the court with "unclean hands" and is not entitled to any remedy. This is an unproven hypothesis, however, as far as the court is concerned. Whatever the history between these two parties, the fact remains that the filing of a bankruptcy case for an improper purpose in bad faith as an improper remedy cannot be condoned. The court has reviewed the fee

requests of Kaufman & Canoles, counsel for Hutchins, under the lodestar standard and finds that they are reasonable. The counsel fees of Hutchins will be awarded as a sanction in the amount claimed.