In re Michael J. FREE, d/b/a Electra
Lighting, Debtor.

James R. Walsh, Esquire, Trustee of the
Bankruptcy Estate of Michael J. Free,
d/b/a Electra Lighting, Movant,

v.

Michael J. Free, d/b/a Electra
Lighting, Respondents.

No. 10–25460–CMB.

United States Bankruptcy Court,
W.D. Pennsylvania.

Feb. 27, 2012.

David A. Colecchia, Greensburg, PA, for Debtor.

## MEMORANDUM OPINION

CARLOTA M. BÖHM, Bankruptcy Judge.

The matter before the Court is the determination of appropriate sanctions pursuant to a finding of civil contempt. The Honorable Bernard Markovitz, to whom this case was previously assigned, heard argument on the Trustee's Motion for Finding of Civil Contempt, Imposition of Sanctions, for Authority to "Junk" Assets, and Request for Expedited Hearing ("Motion") and, by Order dated December 20, 2011, found the Debtor in contempt of the

Court's April 1, 2011 Order and Court directives. After the case was transferred to the undersigned, a hearing solely on the matter of sanctions was held on January 31, 2012. For the reasons set forth below, sanctions for civil contempt will be imposed in the form of rental payments due to the bankruptcy estate, compensation of the Trustee and his counsel for fees and costs resulting from Debtor's violations of Court Orders and his duties under the Bankruptcy Code, and daily fines for failure to comply going forward.

## I. Jurisdiction

The Court has subject jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (O).

## II. Background

On July 30, 2010, Michael J. Free d/b/a Electra Lighting commenced this bankruptcy case by filing a petition for relief under Chapter 13. On February 1, 2011, the case was converted to a case under Chapter 7 and James R. Walsh was appointed as trustee. At the time of conversion, the case was assigned to the Honorable Bernard Markovitz.

At the Meeting of Creditors, the Trustee requested that Debtor produce within ten days, *inter alia*, the keys to Debtor's North Huntingdon Property,[1] keys to two ski chalets located in Westmoreland County near Seven Springs, an accounting of

rent from the Seven Springs properties, and the rent itself. The Debtor was also advised that he must cease business operations. When the Trustee did not receive the items requested, he reiterated his demands and warned that he would be forced to commence turnover litigation if he could not obtain cooperation. His efforts were to no avail.

On March 30, 2011, the Trustee filed at Adv. No. 11–2187 a Complaint to Compel Turnover of Property of the Bankruptcy Estate Pursuant to 11 U.S.C. § 542, Recover Unauthorized Post–Petition Transfers Pursuant to 11 U.S.C. § 549, to Deny Discharge Pursuant to 11 U.S.C. § 727, for Injunctive Relief and/or Temporary Restraining Order Pursuant to Rule 7065, and Request for an Expedited Preliminary Hearing Thereon. The Complaint was premised upon Debtor's failure to turnover assets as requested by the Trustee, his continued business operations, and post-petition sale of inventory.

On April 1, 2011, an expedited hearing before the Honorable Jeffrey A. Deller was held on the Trustee's request for a preliminary and permanent injunction. At the hearing, no defense was offered in response to the request for preliminary injunction. In ruling, Judge Deller stated the undisputed facts: Debtor continued to dispose of property of the bankruptcy estate in violation of the automatic stay, breached his duties pursuant to §§ 521, 541, and 542 of the Bankruptcy Code, in-

---

**1.** Prior to conversion, Debtor operated a lighting supply and fixtures business. One of Debtor's business locations was 10561 Center Highway, North Huntingdon, PA (the "North Huntingdon Property"), a commercial building owned by Debtor prior to the commencement of his bankruptcy case. The North Huntingdon Property was sold at Sheriff's Sale to S & T Bank. However, Debtor refused to vacate and S & T Bank commenced ejectment proceedings. Thereafter, Debtor filed

his bankruptcy petition. Pursuant to the settlement between the Chapter 7 Trustee and S & T Bank approved by the Court on August 2, 2011, S & T Bank conveyed the North Huntingdon Property to the bankruptcy estate. The Bankruptcy Court's Order approving the settlement was affirmed on appeal, and on February 10, 2012, Debtor filed his Notice of Appeal of said Order to the Third Circuit Court of Appeals.

terfered with the Court's jurisdiction, and hindered the Trustee's ability to liquidate assets.

Therefore, for the reasons stated on the record at the hearing, an Order was entered enjoining the Debtor and his agents from accessing the commercial buildings housing the Electra Lighting business, operating the business, and selling or transferring inventory of the business. In addition, the Debtor was ordered to turn over all keys and access devices to the business and to any and all rental properties. The Order provided Debtor with five days to "submit a written accounting to the Trustee of all rental income received after the date of the conversion of this case" and directed Debtor to immediately turn over all rental income received post-conversion. Debtor was also directed to submit a written accounting within five days "of all business inventory or other assets sold or transferred after the conversion of this case...." The Order provided clear consequences for non-compliance: "[f]ailure to immediately and completely abide with the terms of this Order shall constitute contempt of Court and will subject the Debtor to sanctions and penalties, including but not limited to the United States Marshal taking Debtor into custody and bringing him before the Court to answer for his conduct." The April 1, 2011 Order was not appealed.

Shortly thereafter, on April 8, 2011, the Trustee filed a Motion for Finding of Civil Contempt and Imposition of Sanctions due to Debtor's failure to comply with the terms of the April 1, 2011 Order. At the hearing on May 5, 2011, Judge Markovitz recognized the shocking level of disregard for Court orders and found the Debtor's behavior to be among the worst he had seen in twenty-five years on the bench. (Audio Recording of Hearing Held in Courtroom B on May 5, 2011 (9:56–57

AM)). In an attempt to express the gravity of the situation to the Debtor, who was present at the hearing, Judge Markovitz noted the potential for criminal repercussions. (Audio Recording of Hearing Held in Courtroom B on May 5, 2011 (9:58–10:02 AM)). Following the hearing, the parties entered into a consent order whereby the Debtor voluntarily agreed to waive his entitlement to discharge and his right to claim any exemptions.

Subsequently, all matters in the Adversary Proceeding were resolved pursuant to the entry of an Order on May 18, 2011. In that Order, Debtor was found "liable for each and every transfer of estate property from February 1, 2011, forward, plus all costs of this action and interest...." Thereafter, the adversary proceeding was closed. Despite being found liable for post-conversion transfers and the significance of the loss of his discharge and exemptions, these consequences proved insufficient to coerce Debtor to cooperate and comply in the future.

On October 17, 2011, the Trustee filed the Motion currently before the Court seeking a finding of civil contempt and imposition of sanctions. The first hearing on the Motion was held on October 25, 2011, before Judge Markovitz. The Court was informed that, although the Trustee changed the locks at the North Huntingdon property, Debtor managed to enter and operate the business in violation of the April 1, 2011 injunction. Apparently without any defense to the accusations, Counsel for the Debtor stressed to the Court that, despite the Debtor's conduct, significant assets existed to pay creditors in full. Judge Markovitz again remarked several times on the record that Debtor was very close to imprisonment. The Debtor was warned not to enter the property, obstruct the Trustee, utilize estate assets, or violate court orders as such conduct would result

in the Debtor being taken into custody by the United States Marshal. The hearing was continued.

By the time of the next hearing, it became apparent that the Debtor did not heed Judge Markovitz's clear warning. Counsel for the Trustee reported several troubling items to the Court. First, the Trustee reported his discovery of an asset, another ski chalet, owned by Debtor which had not been disclosed. Second, the Debtor continued to impede the Trustee. On July 19, 2011, Debtor was the successful bidder for, *inter alia*, the inventory of the North Huntingdon store location ("North Huntingdon Inventory"). Despite the Trustee's denial of Debtor's request to rent the North Huntingdon Property, Debtor refused to remove the inventory and continued to use the estate property as a rent-free storage facility. In addition, the Trustee reported that he had yet to receive certain firearm licenses from the Debtor so that those assets could be sold. Debtor's Counsel acknowledged that the Debtor needed to provide the Trustee with additional information regarding the firearms and sought an extension of time, until Friday of that week (December 23, 2011), to provide this information. Despite the argument that Debtor's multiple failures to comply with the Court's Orders were "mistakes" and Debtor's plea "again for one more chance", Judge Markovitz concluded on the record that Debtor's actions seemed intentional. At the conclusion of the hearing, the matter was taken under advisement.

Upon consideration of the Motion after the hearing, Judge Markovitz entered an Order finding that "the Debtor has entered onto, continued to utilize, liquidated, otherwise failed to vacate or turn over, and failed to disclose bankruptcy estate property, all in (a) violation of, *inter alia*, a Bankruptcy Court Order entered on April 1, 2011, at Adv. No. 11–2187–BM, Doc. No. 7, as well as this Court's oral directives as set forth at various prior hearings, and (b) breach of the Debtors duties as imposed by various provisions of the Bankruptcy Code[.]" Accordingly, Judge Markovitz found the Debtor in contempt. A hearing was scheduled on January 31, 2012 "to determine the appropriate sanction for such contempt by the Debtor." The December 20, 2011 Order was not appealed.

On January 3, 2012, this case was reassigned. The hearing on sanctions was held on January 31, 2012, and was the first proceeding in this matter to be heard by the undersigned. The matter is ripe for decision.

### III. Sanctions Hearing

A finding of contempt having already been made by Judge Markovitz, the only matter remaining for this Court to address is the imposition of sanctions. At the hearing on January 31, 2012 (the "Sanctions Hearing"), Counsel for the Trustee called two witnesses, the Trustee and Linda Daniels (the "Realtor"), who was retained by the Trustee to market the North Huntingdon Property. The Court finds that these witnesses testified credibly. Debtor's Counsel called no witnesses [2] and

---

**2.** At the Sanctions Hearing, the Debtor sought the opportunity to make a statement against the advice of his counsel, who would not question Debtor due to ethical concerns. Trustee's Counsel objected as Debtor would be providing his statement directly to the Court and his ability to cross-examine would be impaired. The objection was sustained.

The Court concluded that a statement by Debtor would not have impacted the outcome of this matter. First, Debtor had already been found in contempt by the time of the Sanctions Hearing. Second, the purposes of the sanctions imposed herein are to (1) fully compensate for the harm caused by Debtor's violations of Court Orders and his duties un-

sought one more chance and "mercy" on behalf of his client.

In addition to his pleas for mercy, Counsel for Debtor repeatedly emphasized his belief that sufficient assets exist to pay creditors in full. The Debtor seems to argue no harm, no foul. We believe there has been great harm to the integrity of the bankruptcy system. Furthermore, at this time, whether there are sufficient assets to pay creditors has not been and cannot be confirmed. Harm has resulted from Debtor's misconduct, which has created delay and increased administrative expenses. In addition, Debtor recently filed an appeal, which will result in additional administrative expenses. *See* note 1 *supra.* That appeal, if successful, could have a significant impact on the status of this case and the amount of funds needed to pay all creditors in full. Thus, the Trustee must continue to liquidate assets. The Debtor cannot attempt to excuse or mitigate his misconduct by asserting a fact which has not been confirmed.

We turn now to our findings of violations of Court Orders and non-compliance by Debtor. We incorporate herein the findings made by Judge Deller and Judge Markovitz and consider the testimony provided at the Sanctions Hearing.

### Continued Use and Sale of Estate Property

It is undisputed that Debtor continued to access the North Huntingdon Property after conversion of the case to Chapter 7. The Trustee testified that when he first learned that the Debtor was accessing the store, he engaged the services of a locksmith and the locks were changed. Subsequently, the Trustee learned that the Debtor managed to enter the store and was continuing to operate the business.

The locksmith was once again engaged to change the locks on the North Huntingdon Property. Thus, due to the Debtor's misconduct, the estate paid for the locks to be changed twice. This is an additional expense for the estate due to Debtor's misconduct.

In July 2011, shortly before the sale of the inventory, the Realtor testified that she visited the North Huntingdon Property. While there, she witnessed Debtor's sale of merchandise. Therefore, prior to his purchase of the North Huntingdon Inventory and after he had been enjoined from entering the property and operating the business, not only did he enter the property in violation of the Order but he sold merchandise which was property of the estate.

After purchasing the North Huntingdon Inventory, Debtor refused to remove the assets from the store. The inventory filled the premises, and such conditions, according to the Realtor, negatively impact the ability to find a buyer. Debtor's refusal to remove the inventory benefitted him to the extent that he did not have the expense of removing the inventory and storing it elsewhere. At the same time, Debtor made the North Huntingdon Property less attractive to potential purchasers to the detriment of the bankruptcy estate.

On October 24, 2011, the Trustee testified that he personally observed Debtor's continued operation of the business despite (1) the injunction from doing so as stated in the April 1, 2011 Order, (2) the April 2011 motion for contempt and sanctions, resulting in waiver of Debtor's discharge and exemptions, and (3) the current motion for contempt and sanctions before the Court. When the Debtor approached the

---

der the Bankruptcy Code and (2) coerce him to comply as this case proceeds. The second form of sanctions will only arise upon future

non-compliance. Any statement by Debtor would not have impacted the Court's intent to achieve these results.

Trustee outside of the store, the Trustee once again reminded him that he was not to be operating the business. Debtor's conduct, without question, was willful.

The Trustee testified that one of the consequences of the Debtor's continued operation of the store was the loss of insurance due to the presence of an unauthorized occupant. In order to comply with his duty to maintain insurance, the Trustee was forced to switch to a higher risk carrier at a higher cost. Debtor's actions resulted in yet another expense to the estate.

It has been established that, after conversion of this case, Debtor entered into the store and sold merchandise. On that basis, the April 1, 2011 Order required Debtor to submit a written accounting of all inventory or other assets sold. Subsequently, the May 18, 2011 Order found that "Defendant [Debtor] is liable for each and every transfer of estate property from February 1, 2011, forward. . . ." Despite these Orders, based on the testimony provided, Debtor did not provide the accounting of assets sold and continued to enter the store and operate the business.

Debtor hindered the Trustee's attempts to liquidate assets for the benefit of creditors and continued to create additional expenses for the estate. The Debtor has established a pattern of conduct of disregarding Court Orders and doing as he pleases. We find that he has acted unreasonably and vexatiously throughout the course of this bankruptcy case causing increasing expenses, disruption, and delay.

### Disclosed Westmoreland County Ski Chalets

The Trustee sought an accounting of the rent received from the ski chalets located in Westmoreland County and the rental income itself. Despite the entry of the April 1, 2011 Order, requiring an accounting of rental income received post-petition and turnover of that income, the Trustee reported that no such turnover was made. After being ordered to do so by this Court at the Sanctions Hearing, on February 8, 2012, eleven months after the initial order to do so, Debtor filed an affidavit reporting that he received no rent from the ski chalets after his bankruptcy case was converted to Chapter 7. Although the Debtor has not established credibility with this Court, no evidence to the contrary has been presented.

### Firearms

The Court has been informed that certain firearms remain in the Debtor's possession as the Trustee indicated that he does not have the appropriate licenses and permits to take possession of them. After repeated demands for the necessary documentation, Debtor has turned over only copies despite the Trustee's insistence that he must obtain the originals in order to retain a broker to sell these assets. At the Sanctions Hearing, the Court ordered the immediate turnover of said items or, if the Debtor did not possess the necessary documentation, the filing of an affidavit to that effect. Accordingly, after another demand by the Trustee, on February 8, 2012, Debtor filed an affidavit stating that he possesses only copies and no originals of the titles to the firearms. Although Debtor has a history in this case of refusing to cooperate and concealing assets, there is no evidence to the contrary of his sworn statement.

As the Trustee must continue his efforts to liquidate the firearms currently in the Debtor's possession, the Debtor's cooperation is necessary. However, by way of status report, the Trustee reported that he demanded, but had yet to receive, a complete list of all firearms including make, model and serial number. In his February 14, 2012 Status Report, the Trustee informed the Court that his counsel at-

tempted to coordinate with Debtor to arrange dates and times for a firearm liquidator to inspect the firearms. However, according to the Trustee, Debtor has once again refused to cooperate.

### Undisclosed Fayette County Property

When the Motion was filed, the Trustee had yet to learn about Debtor's ski chalet in Fayette County (the "Fayette County Property") and its contents, including, *inter alia*, four snow mobiles, a 1932 Ford automobile, a John Deere tractor, an Ariens lawnmower, a work bench with various tools, and a trailer. Ultimately, the Trustee was informed about the Debtor's ownership of the Fayette County Property, which Debtor failed to disclose. Although the discovery of the Fayette County Property was raised by the Trustee at the December 20, 2011 hearing and Counsel for Debtor directed his client on the record to turn over the keys at that time, Debtor did not turn over keys to the property until the conclusion of the Sanctions Hearing, over one month later. The delay in compliance is inexplicable, inexcusable, and a willful violation of Debtor's duties under the Bankruptcy Code.

Thus, in a case that was converted to Chapter 7 on February 1, 2011, the Trustee's first opportunity to gain access to the Fayette County Property came one year later. In a status report filed February 6, 2012, the Trustee reported that the keys to the snowmobiles and keys, title, and registration of the 1932 Ford automobile had yet to be turned over, despite his demand.

The Debtor's February 8, 2012 Affidavits, prepared in response to the Court's directive at the Sanctions Hearing, provide that the keys to the 1932 Ford are in the vehicle and that Debtor does not believe that he has either the title or registration to the vehicle. As to the snowmobiles, he stated that, to his knowledge and recollection, the keys are in the ignitions. The Trustee's February 14, 2012 Status Report states that "[t]o date, the Trustee or his counsel has not received the keys, title and/or registration to the Ford automobile located at the undisclosed Fayette County property. Nor has the Trustee received the keys to the four (4) snowmobiles discovered at the undisclosed Fayette County property." Although Debtor claims he does not have the title and registration for the 1932 Ford, it is apparent that the keys are not where Debtor led the Trustee to believe.

### Conclusion

We find the Debtor has acted willfully, vexatiously, wantonly, and in bad faith. His inappropriate conduct has negatively impacted the entire bankruptcy case. The Debtor has consistently acted in blatant disregard of this Court's Orders and his duties under the Bankruptcy Code causing disruption and delay. Although the facts established at the Sanctions Hearing alone are sufficient to justify the imposition of sanctions, we note that even after the Sanctions Hearing, Debtor continues in his pattern of misconduct. This continued intentional behavior results in the Trustee filing additional status reports to bring these matters to the Court's attention. The Debtor has persisted in his willful misconduct despite the attempts of three bankruptcy judges to dissuade him from future misconduct. The failure to cooperate and comply while the Debtor is facing sanctions for civil contempt is shocking to the Court. The Debtor must be sanctioned to compensate the Trustee and the estate and to deter him from future misconduct.

### IV. Sanctions

The Motion before the Court sought a finding of civil contempt, and that Motion was granted by the Order dated December 20, 2011. Pursuant to a bank-

ruptcy court's civil contempt power, derived from 11 U.S.C. § 105(a), a court may impose sanctions to remedy violations of its orders. *See Bartock v. BAE Survivability Sys., LLC (In re Bartock),* 398 B.R. 135, 160 (Bankr.W.D.Pa.2008).

In addition to the Court's ability to impose sanctions through the contempt power, the bankruptcy court has the inherent power to police itself by sanctioning parties who have "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.,* 57 F.3d 1215, 1224 (3d Cir.1995) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). Sanctions imposed pursuant to the inherent power vindicate the court's authority while avoiding the need to "resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." *Id.* Although civil contempt has been found on the facts of this case, based upon Debtor's persistent, willful, bad faith conduct, the Court's inherent authority provides an alternative basis for sanctions.

"There are two types of contempt: criminal and civil. Whether a sanction for contempt is criminal or civil depends on the character of the sanction imposed, not on the subjective intent of the court." *Walsh v. Bracken (In re Davitch),* 336 B.R. 241, 251 (Bankr.W.D.Pa.2006). Whereas a sanction is civil if its purpose is either to coerce compliance with court orders or compensate for losses sustained due to non-compliance, a sanction is criminal and punitive where its purpose is to vindicate the authority of the court, providing no "opportunity to repent or change one's mind". *Id.*[3]

The forms of civil sanctions are many and varied, providing judges with the ability to fashion an appropriate remedy. *Latrobe Steel Co. v. United Steelworkers of America,* 545 F.2d 1336, 1344 (3d Cir.1976). Sanctions for civil contempt may take the form of incarceration, fines, reimbursement for losses incurred in pursuing compliance with orders, or a combination of these. *Id.*

At the sanctions hearing, Counsel for Debtor primarily impressed upon the Court that, despite the delays and problems resulting from Debtor's conduct, sanctions at this point may simply amount to "flogging" where there are sufficient assets to pay creditors. (Audio Recording of Hearing Held in Courtroom B, January 31, 2012 (11:02–04, 11:08 AM)). Counsel for Debtor suggested that it may be sufficient for the Court to "[j]ust simply remind [the Debtor] to stay out of [the] North Huntingdon [Property] ... and continue to move this case forward." (Audio Recording of Hearing Held in Courtroom B, January 31, 2012 (11:08 AM)). We disagree. First, it has not been confirmed, and cannot be confirmed at this point in time, that there are sufficient assets to

---

**3.** The conduct of this Debtor has been egregious as indicated by three different bankruptcy judges who have heard proceedings in this case. At no point has the Debtor portrayed remorse. Although a term of imprisonment and a sizeable fine appear to be fitting sanctions for Debtor's willful and vexatious behavior, having found the Debtor in civil contempt, the Court is not imposing punitive sanctions. However, the Trustee advised the Court that, upon discovery of undisclosed assets, the Trustee complied with his duty and reported the matter to the United States Trustee with the recommendation that appropriate action be taken. (Audio Recording of Hearing Held in Courtroom B on December 20, 2011 (11:13–14 AM)). Therefore, to the extent the United States Attorney is apprised of the matter by the United States Trustee and acts on the recommendation, the Debtor may face punitive consequences in the appropriate forum.

satisfy creditors in full while administrative costs continue to accumulate. *See* discussion *supra* p. 7. Furthermore, we find that it is inappropriate to disregard the abhorrent conduct of the Debtor on the sole basis that there may be sufficient assets to pay creditors in full. Second, based upon the record in this case, a "reminder" would clearly be insufficient for this Debtor. The Court has no reason to believe that a reminder at this time would be any more effective than previous orders and directives which Debtor has disregarded as though they were simply suggestions. Despite multiple reminders by his counsel, motions by the Trustee, and orders and directives on the record by this Court, the Debtor has continued to willfully act in direct contravention of his duties under the Bankruptcy Code. The Debtor has flouted the authority of this Court and has hindered the Trustee every step of the way. The serious nature of this matter was not lost on Debtor's Counsel, who acknowledged that his client is in need of the Court's mercy.[4] Although willfulness is not a requisite element of civil contempt, willfulness is relevant to determination of the sanction to be imposed. *See Harley–Davidson, Inc. v. Morris,* 19 F.3d 142 (3d Cir.1994).

At the conclusion of the Sanctions Hearing, Counsel for the Trustee clarified the relief sought. The Trustee seeks an order (1) directing the Marshal to immediately take the Debtor into custody; (2) ordering imprisonment of the Debtor; (3) requiring Debtor to pay rent for the use of the North Huntingdon Property from August 2011 through closing on the sale of that North Huntingdon Property; (4) requiring turnover of all of the original certificates for the firearms; (5) awarding Counsel

fees to the Trustee associated with the preparation, filing, and presentation of this Motion. The Motion also seeks imposition of such additional sanctions as the Court deems appropriate. Based upon the record before us, we consider the forms of sanctions and what sanctions best fit the circumstances of this case.

 Sanctions for civil contempt may be divisible into two categories: remedial and coercive. *See Latrobe Steel Co. v. United Steelworkers of America,* 545 F.2d 1336, 1344 (3d Cir.1976). Remedial sanctions are backward looking and are imposed to compensate the aggrieved party for damages caused by non-compliance. *Id.* Coercive sanctions, on the other hand, are forward looking and are intended to coerce the defiant party to comply by setting forth penalties in advance which will be imposed for non-compliance. *Id.* The Court finds that both forms of sanctions are appropriate in this case.

### Remedial Sanctions

*Rental Payments for Use of the North Huntingdon Property*

 In the Motion, the Trustee seeks rent for the period of time that the North Huntingdon Inventory remained in the North Huntingdon Property after the Debtor's purchase of the inventory. Debtor refused to remove the inventory thereby benefiting himself at the expense of the estate and interfering with the marketing of the North Huntingdon Property. In terms of sanctions, payment of rent for the period of time that the premises were used after repeated demands to vacate fulfills the remedial purpose of a civil sanction in that it makes the estate whole and compensates for the damage caused by Debt-

---

4. "It's bad, Your Honor. I mean, essentially, I'm here to ask for mercy for Mr. Free in this regard." (Audio Recording of Hearing Held in Courtroom B, January 31, 2012 (10:31 AM)).

or's refusal to cooperate. However, notwithstanding a finding of civil contempt, the Debtor has an obligation to pay the estate the rental value of the property. The payment of rent is not a penalty imposed on Debtor, but rather is a debt he owes to the estate.

The Court was not presented with testimony regarding the appropriate rental value of the North Huntingdon Property. At the Sanctions Hearing, Counsel for the Trustee represented that $1,000.00 per month is the appropriate rental value as suggested by the Realtor. The Debtor contended that the monthly rental fee sought by the Trustee was high and proposed that half of that amount is appropriate. It is clear that rent is due for the unauthorized use of the property. Based upon the amounts proposed by the parties, we find that rent in the amount of $750.00 per month is appropriate, beginning with the month of August 2011 and continuing through February 2012. If the Trustee contends that rent is due beyond February 2012, he may file an appropriate motion seeking additional rent. Due to the large quantity of inventory located on the premises, the size of the facility, and the inconvenience caused by the failure to remove the items, $750.00 per month may be a bargain for the Debtor.

*Fees and Expenses of Trustee and Counsel*

The Trustee also seeks payment of his "counsel fees and expenses associated with the preparation, filing, and presentation of this Motion[.]" We agree with the finding in *Robin Woods Inc. v. Woods.* An award of counsel fees and expenses is remedial in nature and intended to compensate for losses incurred as a result of Debtor's noncompliance. *See Robin Woods Inc. v. Woods,* 28 F.3d 396, 401 (3d Cir.1994). Due to the Debtor's misconduct throughout this case, the Trustee's Counsel has been forced to file a complaint for recovery of post-petition transfers, obtain an injunction, and file two motions for civil contempt and sanctions. *See* Part II *supra.* The Trustee and his counsel have made repeated demands for compliance and cooperation, but those demands have fallen on deaf ears. Due to Debtor's continued operation of the business, sale and use of estate property, failure to provide accountings of property, and a number of other violations of Orders and his duties under the Bankruptcy Code, the Trustee's Counsel had no choice but to bring the Debtor's brazen misconduct to the attention of this Court by way of various motions and pleadings. We find that it would be inappropriate to burden the estate, potentially to the detriment of creditors, due to fees and costs resulting directly from Debtor's inexcusable obstinacy. Therefore, the Trustee is entitled to payment of his counsel fees and expenses for these efforts and those will be awarded.

Furthermore, not only has the Trustee's Counsel incurred excessive fees due to Debtor's misconduct, but we also find that the Trustee has been forced to go above and beyond what is required in a typical bankruptcy case due to the egregious behavior of the Debtor. The Trustee was forced to have the locks on the North Huntingdon Property changed twice. He was compelled to find a higher risk insurance carrier for the property as a result of Debtor's continued unauthorized entry and use. His efforts to market the North Huntingdon Property were hindered by Debtor's failure to remove the massive amount of inventory which he purchased. The list of Debtor's interference and misconduct is extensive. *See* Part II *supra.* Therefore, we find that the Trustee is entitled to an award of his fees for his actual recorded time and expenses resulting from Debtor's refusal to cooperate and

Trustee's efforts to compel Debtor's compliance. *See Rothchild's Jewelers, Inc.*, 337 B.R. 561, 569 (Bankr.E.D.Va.2004) ("Ordinarily, a chapter 7 trustee's compensation is based upon the statutory schedule set out in Code § 326(a). However, because the fee request here represents an award of sanctions, the trustee will be allowed the full amount of his attorney time charges."). We find that, in addition to attorney's fees, it is appropriate to compensate the Trustee in the form of a civil fine for his time spent and expenses incurred investigating and demonstrating Debtor's violations and preparing for contempt litigation, and we grant the Trustee reimbursement for actual fees and costs incurred. *Cf. Robin Woods*, 28 F.3d at 400–401. However, at the conclusion of this case, when the Trustee files his Final Account, the Trustee will not be permitted a double recovery from the estate and Debtor. Thus, if the Trustee's statutory fee at the conclusion of this case is less than the monies recovered from Debtor, no further recovery from the estate shall be made. To the extent his statutory fee exceeds the monies received from Debtor, he shall credit the estate for the amount received and may only request the difference as an administrative expense. Thus, the Trustee is made whole by payment for his full time spent due to Debtor's noncompliance with Court Orders and bad faith misconduct. Therefore, Debtor is being held responsible for the amounts expended due to his own willful, inexcusable misconduct.

The Trustee and his counsel shall file fee petitions setting forth their fees and expenses on or before March 15, 2012. The fee petitions shall include their recorded time related to efforts taken as a direct result of Debtor's violations of this Court's Orders and his duties under the Bankruptcy Code. In analyzing the time records submitted, the Court will apply the lodestar formula, taking into account the hours reasonably expended at a reasonable rate. *See Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 177 (3d Cir.2001). The Debtor shall have until March 26, 2012 to file an objection to the time records submitted. Upon the Court's review of the fee petitions and any objections thereto, Debtor will be ordered to pay the appropriate sums and judgment will be entered against the Debtor without further hearing. To the extent further action by the Trustee is necessitated by any continued misconduct, the Trustee, on behalf of himself and his counsel, may file an appropriate motion seeking additional fees and expenses.

*Coercive Sanctions*

*Fines for Non–Compliance*

■ Due to Debtor's consistent disregard for the Orders of this Court and to ensure that the Trustee can complete his duties with the cooperation of the Debtor, we find it necessary to make the Order accompanying this Memorandum Opinion self-effectuating. Therefore, we will incorporate sanctions for potential failure to comply as stated herein.

As set forth above, the bankruptcy estate is owed rent from August 2011 through the end of February (seven months), totaling $5,250.00, for the Debtor's continued unauthorized use of the North Huntingdon Property. The rent is due to the bankruptcy estate on or before March 15, 2012. Failure to pay the amount by the deadline provided will result in the daily accumulation of fines payable to the Court. The Court finds the appropriate fine to be $500.00 per day after March 15, 2012 until the full amount is paid.

In violation of the April 1, 2011 Order, Debtor failed to provide an accounting of the goods he sold and the income received from those unauthorized post-conversion

sales. As of the Trustee's Status Report filed February 13, 2012, the accounting still had not been provided. The Debtor ignored the Order for over ten months without explanation or request for extension. Debtor shall provide an accounting of the goods he sold and the income he received, to date, from the unauthorized post-conversion sales in the manner set forth in the April 1, 2011 Order, which provides as follows:

> The Debtor shall … submit a written accounting to the Trustee of all business inventory or other assets sold or transferred after the conversion of this case to Chapter 7, which accounting shall include, at a minimum, the name and address of the payor, a description of the item(s) sold or transferred, the date of the sale/transfer, the amount of the sale/transfer, the form of payment, and any and all documentation of said payments, including without limitation receipts, copies of checks, deposit slips, etc.

By Order dated May 18, 2011, Debtor was found "liable for each and every transfer of estate property from February 1, 2011, forward, plus all costs of [the] action and interest at 6% per annum" from March 30, 2011. The Debtor shall file the aforesaid accounting and reimburse the estate for proceeds received from the sales on or before March 15, 2012. Failure to do so by the deadline provided will result in the daily accumulation of fines payable to the Court. The Court finds the appropriate fine to be $500.00 per day after March 15, 2012 until Debtor fully complies. No extensions of the deadline will be granted. Debtor had plenty of time to compile the accounting previously ordered.

In the Trustee's February 13, 2012 Status Report, the Trustee reiterated his previous demands for an itemized list of the firearms. Although the Trustee also sought documentation related to the firearms, such as permits and licenses, Debtor has stated by way of affidavit that he has provided to the Trustee all documentation within his possession. Therefore, no further order relating to the documentation will be entered. However, Debtor must comply with the Trustee's demand to file the itemization, which shall include the location, make, model, and serial number for each firearm. Debtor shall do so on or before March 15, 2012. Failure to do so by the deadline provided will result in the daily accumulation of fines payable to the Court. The Court finds the appropriate fine to be $500.00 per day after March 15, 2012 until Debtor fully complies.

By way of the Trustee's February 14, 2012 Status Report, the Court has been advised that despite Counsel for the Trustee's request that the Debtor provide available dates and times for a firearm liquidator to inspect the firearms, Debtor refused to provide the requested information and further refused to deal with anyone other than the Trustee directly. Debtor shall provide at least four available dates and times in March 2012 to the Trustee or Trustee's Counsel on or before Monday, March 5, 2012, and shall cooperate with the Trustee *and* Trustee's Counsel. Failure to provide the information by the deadline provided will result in the daily accumulation of fines payable to the Court. The Court finds the appropriate fine to be $500.00 per day after March 5, 2012 until Debtor fully complies.

Upon the expiration of the deadlines imposed herein, the Trustee shall file a status report indicating, as to each item, whether the Debtor has fully and timely complied. Failure to comply will result in this Court ordering the United States Marshal to take Debtor into custody and bring him before this Court to answer for his conduct.

*Incarceration*

 When incarceration is imposed as a civil sanction, the purpose is not punishment. Instead, confinement is imposed for an indefinite period which will conclude only upon compliance with the court's order. *Latrobe Steel,* 545 F.2d at 1344. Here, the Trustee seeks imprisonment of "the Debtor for, at a minimum, the pendency of this Chapter 7 case in order to prevent the Debtor from interfering with the Trustee's liquidation of the assets of the estate[.]" The purpose of the requested sanction is not to punish the Debtor, but rather appears to be, in the Trustee's opinion, the only way to put a stop to Debtor's continuous interference and his refusal to comply with this Court's Orders.

Although nothing excuses Debtor's conduct, the Court finds that incarceration for civil contempt is not the most appropriate tool to obtain Debtor's compliance at this time. We are cognizant of the drastic nature of that sanction and, as provided above, will utilize fines in the alternative to imprisonment. We note, however, that the case is still proceeding and Debtor's duty to cooperate continues. The Court is well versed on the Debtor's past conduct and will provide no second chances should it come to the Court's attention that Debtor is interfering with the Trustee in any way despite the imposition of daily fines for misconduct. If the Court is convinced that compliance can be obtained only by incarceration, we will not hesitate to order the Debtor to be taken into custody. At this point in time, the Court is showing mercy on Debtor as repeatedly requested by Debtor's Counsel.

**Ability to Pay**

 As monetary sanctions will be imposed, we consider whether the amounts are appropriate in light of the Debtor's ability to pay. Here, the Court has little doubt that Debtor can afford to pay the amount imposed as sanctions. Debtor has been the successful bidder in sales brought by the Trustee. On February 7, 2012, Debtor successfully bid $215,000.00 for the North Huntingdon Property. Debtor paid the nonrefundable ten percent deposit, and closing is to occur in early March 2012. If Debtor has sufficient funds to pay for these assets, the Court sees no reason why he should be excused from payment of these sanctions which have accrued as a result of his own wanton misconduct. Furthermore, to the extent any daily fines will be imposed, those will begin to accumulate only after failure to do as ordered. Thus, payment of those daily fines can be avoided by simply complying.

## V. Conclusion

The Debtor's willful bad faith conduct has delayed distribution to creditors and caused the administrative expenses in this case to be astronomical. As a result, the fees and expenses incurred by the Trustee and Trustee's Counsel shall be paid by Debtor. In addition, Debtor shall compensate the estate for his unauthorized use of the North Huntingdon Property as storage. Further failure to cooperate or noncompliance will result in imposition of daily fines. The sanctions imposed would be even more severe if it were not for the fact that the Debtor previously waived any right to a discharge and entitlement to exemptions. The Trustee shall continue to liquidate assets pursuant to his duty to ensure maximum payment to creditors. An appropriate Order will be entered.